# UNITED STATES DISTRICT COURT

### 219 U.S. Courthouse
### El Paso, Texas 79901



William G. Putnicki
Clerk of Court



**FILED**

SEP - 3 2008

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY *man* DEPUTY

August 27, 2008

'08 CR 7041 -IEG

U.S. Clerk
Weldon S. Hamrick
4290 Edward J. Schwartz
 United States Courthouse
940 Front Street
San Diego, CA 92101

I, WILLIAM G. PUTNICKI, Clerk of the United States District Court for the Western

District of Texas, do hereby certify and transfer jurisdiction to the U.S. District Court,

Southern District of California, pursuant to an Order entered transferring, by the Honorable

Judge Philip R. Martinez. Enclosed please find certified copies of the Indictment, J & C,

docket sheet and order transferring jurisdiction in the cause entitled: <u>USA vs. Dean Miller,</u>

<u>EP-03-CR-2294-PRM.</u>

IN TESTIMONY WHEREOF, I have hereunto Subscribed my

name and affixed the seal of the aforesaid Court at El Paso,

Texas, this 27th day of August, 2008.

WILLIAM G. PUTNICKI, CLERK

*Please acknowledge receipt on the enclosed
copy of this letter and return in the SASE.*

BY: *Michael E. Trujillo*

Michael E. Trujillo, Deputy

| PROB 22<br>(Rev. 9/98)          TRANSFER OF JURISDICTION | DOCKET NUMBER *(Tran. Court)*<br>EP-03-CR-2294PRM(10) |
|---|---|
| | DOCKET NUMBER *(Rec. Court)*<br>08 CR 7041-IEG |

| NAME AND ADDRESS OF PROBATIONER/SUPERVISED RELEASEE<br><br>Dean Miller<br>TN: Dean Gordon Miller | DISTRICT<br>WD/TX | ~~DIVISION~~<br>EL PASO |
|---|---|---|
| | NAME OF SENTENCING JUDGE<br>Philip R. Martinez | |
| | DATES OF SUPERVISED RELEASE | FROM<br>05/02/08 | TO<br>05/01/11 |

**OFFENSE:** 18 U.S.C. §§ 371, 545, 2342 and 2320; Conspiracy to smuggle cigarettes in the United States, Traffic in contraband cigarettes and Traffic in counterfeit goods.

### PART 1 - ORDER TRANSFERRING JURISDICTION

UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TEXAS

    IT IS HEREBY ORDERED that pursuant to 18 U.S.C. 3605 the jurisdiction of the probationer or supervised releasee named above be transferred with the records of the Court to the United States District Court for the <u>Southern District of California</u> upon that Court's order of acceptance of jurisdiction. This Court hereby expressly consents that the period of probation or supervised release may be changed by the District Court to which this transfer is made without further inquiry of this court.*

| 6/18/2008 | |
|---|---|
| Date | United States District Judge |

*This sentence may be deleted in the discretion of the transferring Court.

### PART 2 - ORDER ACCEPTING JURISDICTION

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF CALIFORNIA

    IT IS HEREBY ORDERED that jurisdiction over the above-named supervised releasee be accepted and assumed by this Court from and after the entry of this order.

A true copy of the original, I certify.
Clerk, U. S. District Court

| 7/3/08 | By M. Tujillo | Irma e Gonzalez |
|---|---|---|
| Effective Date | Deputy | United States District Judge |

AO 245 B (Rev. 05/04)(W.D.TX.) - Judgment in a Criminal Case

# UNITED STATES DISTRICT COURT
## Western District of Texas
### EL PASO DIVISION

FILED

2005 APR 27 PM 1:49

CLERK, US DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY

UNITED STATES OF AMERICA

v.

Dean Miller, TN: DEAN GORDON MILLER

Defendant.

Case Number    EP-03-CR-2294-PRM(10)
USM Number    89845-198

## AMENDED JUDGMENT IN A CRIMINAL CASE
### (For Offenses Committed On or After November 1, 1987)

The defendant, Dean Miller, TN: DEAN GORDON MILLER, was represented by Daniel S. Gonzalez.

On motion of the United States, the Court has dismissed Counts 2, 10, 11, 48, 49, 50, 52, 58, 63, 73, 74 and 79.

The defendant pled guilty to Count 1 of the Indictment on November 19, 2004. Accordingly, the defendant is adjudged guilty of such Count, involving the following offense:

| Title & Section | Nature of Offense | Date Offense Concluded | Count Number |
|---|---|---|---|
| 18 USC 371, 545, 2342 and 2320 | Conspiracy to smuggle cigarettes in the United States, Traffic in contraband cigarettes and Traffic in counterfeit goods | 12/2003 | 1 |

As pronounced on February 17, 2005, the defendant is sentenced as provided in pages 2 through 6 of this Judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

It is further ordered that the defendant shall notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this Judgment are fully paid. If ordered to pay restitution, the defendant shall notify the Court and United States Attorney of any material change in the defendant's economic circumstances.

Signed this the 27th day of April, 2005.

PHILIP R. MARTINEZ
United States District Judge

A true copy of the original, I certify.
Clerk, U. S. District Court

By_____
Deputy

576

RV/_____

AO 245 B (Rev. 05/04)(W.D.TX.) - Imprisonment

Judgment--Page 2

Defendant: Dean Miller, TN: DEAN GORDON MILLER
Case Number: EP-03-CR-2294 PRM(10)

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a term of forty (48) months with credit for time served while in custody for this federal offense.

The Court makes the following recommendations to the Bureau of Prisons:

That the defendant serve this sentence at F. P. C., Nellis, Nevada.

The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons on May 3, 2005, at or before 2:00 PM when notified to report by the United States Marshal .

## RETURN

I have executed this Judgment as follows:

_____

_____

_____

Defendant delivered on _____ to _____

at _____, with a certified copy of this Judgment.

_____
United States Marshal

By _____
Deputy Marshal

RV/_____

AO 245 B (Rev. 05/04)(W.D.TX.) - Supervised Release

Defendant:  Dean Miller, TN: DEAN GORDON MILLER
Case Number:  EP-03-CR-2294 PRM(10)

### SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of three (3) years.

While on supervised release, the defendant shall comply with the mandatory, standard and if applicable, the special conditions that have been adopted by this Court as set forth on pages 4 and 5 of this judgment.

RV/_____

AO 245 B (Rev. 05/04)(W.D.TX.) - Supervised Release

Judgment--Page 4

Defendant: Dean Miller, TN: DEAN GORDON MILLER
Case Number: EP-03-CR-2294 PRM(10)

## CONDITIONS OF SUPERVISION

**Mandatory Conditions:**

1)   The defendant shall not commit another federal, state, or local crime.

2)   The defendant shall not unlawfully possess a controlled substance. The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.

3)   In supervised release cases only, the defendant must report to the probation office in the district to which the defendant is released within 72 hours of release from custody of the Bureau of Prisons.

4)   If convicted of a felony, the defendant shall not possess a firearm, ammunition, destructive device, or any other dangerous weapon.

5)   The defendant shall cooperate in the collection of DNA as directed by the probation officer if the collection of such a sample is authorized pursuant to section 3 of the DNA Analysis Backlog Elimination Act of 2000 (42 U.S.C. § 1413a).

6)   If convicted of a sexual offense as described in 18 U.S.C. § 4042(c)(4), the defendant shall register with the state sex offender registration agency in the state where the defendant resides, works, or is a student, as directed by the probation officer.

7)   If convicted of a domestic violence crime as defined in 18 U.S. C. § 3561(b), the defendant shall participate in an approved program for domestic violence.

8)   If the judgment imposes a fine or restitution, it is a condition of supervision that the defendant pay in accordance with the Schedule of Payments sheet of the judgment.

**Standard Conditions:**

1)   The defendant shall not leave the judicial district without permission of the court or probation officer.

2)   The defendant shall report to the Probation Officer and shall submit a truthful and complete written report within the first five days of each month.

3)   The defendant shall answer truthfully all inquires by the Probation Officer and follow the instructions of the Probation Officer.

4)   The defendant shall support his or her dependents and meet other family responsibilities.

5)   The defendant shall work regularly at a lawful occupation unless excused by the Probation Officer for schooling, training or other acceptable reasons.

6)   The defendant shall notify the Probation Officer at least ten days prior to any change in residence or employment.

7)   The defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substance, except as prescribed by a physician.

8)   The defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered.

9)   The defendant shall not associate with any persons engaged in criminal activity, and shall not associate with any person convicted of a felony unless granted permission to do so by the Probation Officer.

10)  The defendant shall permit a Probation Officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the Probation Officer.

11)  The defendant shall notify the Probation Officer within seventy-two hours of being arrested or questioned by a law enforcement officer.

12)  The defendant shall not enter into any agreement to act as an informer or special agent of a law enforcement agency without the permission of the Court.

13)  As directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

RV/_____

AO 245 B (Rev. 05/04)(W.D.TX.) - Supervised Release

Judgment--Page 5

Defendant: Dean Miller, TN: DEAN GORDON MILLER
Case Number: EP-03-CR-2294 PRM(10)

14) If convicted of a sexual offense as described in 18 U.S.C. § 4042(c)(4), or has a prior conviction of a State or local offense that would have been an offense as described in 18 U.S.C. § 4042 (c)(4) if a circumstance giving rise to Federal jurisdiction had existed, the defendant shall participate in a sex offender treatment program approved by the probation officer. The defendant shall abide by all program rules, requirements and conditions of the sex offender treatment program, including submission to polygraph testing, to determine if the defendant is in compliance with the conditions of release. The defendant may be required to contribute to the cost of the services rendered (copayment) in an amount to be determined by the probation officer, based on the defendant's ability to pay.

15) The defendant shall submit to an evaluation for substance abuse or dependency treatment as directed by the probation officer, and if deemed necessary by the probation officer, the defendant shall participate in a program approved by the probation officer for treatment of narcotic addiction or drug or alcohol dependency which may include testing and examination to determine if the defendant has reverted to the use of drugs or alcohol. The defendant may be required to contribute to the cost of the services rendered (copayment) in an amount to be determined by the probation officer, based upon the defendant's ability to pay.

16) The defendant shall submit to an evaluation for mental health counseling as directed by the probation officer, and if deemed necessary by the probation officer, the defendant shall participate in a mental health program approved by the probation officer. The defendant may be required to contribute to the cost of the services rendered (copayment) in an amount to be determined by the probation officer, based upon the defendant's ability to pay.

17) If the defendant is excluded, deported, or removed upon release from imprisonment, the term of supervised release shall be a non-reporting term of supervised release. The defendant shall not illegally re-enter the United States. If the defendant lawfully re-enters the United States during the term of supervised release, the defendant shall immediately report in person to the nearest U.S. Probation Office.

18) If the judgment imposes other criminal monetary penalties, it is a condition of supervision that the defendant pay such penalties in accordance with the Schedule of Payments sheet of the judgment.

19) If the judgment imposes a fine, special assessment, restitution, or other criminal monetary penalties, it is a condition of supervision that the defendant shall provide the probation officer access to any requested financial information.

20) If the judgment imposes a fine, special assessment, restitution, or other criminal monetary penalties, it is a condition of supervision that the defendant shall not incur any new credit charges or open additional lines of credit without the approval of the probation officer unless the defendant is in compliance with the payment schedule.

The Court further adopts such of the following special conditions applied to the supervised person by the judge at the time of sentencing:

1) The defendant shall perform 200 hours of community service work without pay, at a location approved by the probation officer, at a minimum rate of four hours per week, to be completed during the term of supervision.

2) The defendant shall not incur new charges or open additional lines of credit without approval by the U.S. Probation Office, unless the defendant is in compliance with the fine imposed. The defendant shall provide the U.S. Probation Officer access to any requested financial information.

Upon a finding of a violation of probation or supervised release, I understand that the court may (1) revoke supervision, (2) extend the term of supervision, and/or (3) modify the conditions of supervision.

These conditions have been read to me. I fully uderstand the conditions and have been provided a copy of them.

_____ Date _____

Defendant

_____ Date _____

U.S. Probation Officer/Designated Witness        RV/

AO 245 B (Rev. 05/04)(W.D.TX.) - CMP

Defendant: Dean Miller, TN: DEAN GORDON MILLER
Case Number: EP-03-CR-2294 PRM(10)

### CRIMINAL MONETARY PENALTIES/ SCHEDULE

The defendant shall pay the following total criminal monetary penalties in accordance with the schedule of payments set forth. Criminal Monetary Penalties, except those payments made through Federal Bureau of Prisons' Inmate Financial Responsibility Program shall be paid through the Clerk, United States District Court,  511 E. San Antonio Street, Room 219 El Paso, Texas 79901.

|  | Assessment | Fine | Restitution |
|---|---|---|---|
| TOTAL: | $100.00 | $10,000.00 | $0 |

#### Special Assessment

It is ordered that the defendant shall pay to the United States a special assessment of $100.00.  Payment of this sum shall begin immediately.

#### Fine

The defendant shall pay a fine of $10,000.00.  Payment of this sum shall begin immediately.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below.  However, pursuant to 18 U.S.C. § 3664(i), all non-federal victims must be paid before the United States is paid.

If the fine is not paid, the court may sentence the defendant to any sentence which might have been originally imposed. See 18 U.S.C. §3614.

The defendant shall pay interest on any fine or restitution of more than $2,500.00, unless the fine or restitution is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. §3612(f).  All payment options may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. §3612(g).

Payments shall be applied in the following order: (1)  assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) community restitution, (6) fine interest,  (7) penalties, and (8) costs, including cost of prosecution and court costs.

Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### EL PASO DIVISION

FILED

2003 DEC 11 PM 1:50

CLERK. US DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____
DEPUTY

UNITED STATES OF AMERICA,

Plaintiff,

v.

DEAN MILLER,

Defendants.

§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§

SEALED INDICTMENT

Cause No. EP-03-CR-

EP03CR2294

[VIOLATIONS:

CT 1: 18 §§ 371, 545, 2342(a) & 2320(a): Conspiracy to: Smuggle Cigarettes into U.S., Traffic in Contraband Cigarettes and Traffic in Counterfeit Goods;

CT 2: 18 §§ 1349, 1343 & 1341: Conspiracy to: Commit Wire Fraud and Commit Mail Fraud;

CTS 3 - 16: 18 §§ 2 & 545 - Aiding and Abetting, and Smuggling Contraband and Counterfeit Cigarettes; ----- ------

CTS 17 - 47: 18 U.S.C. §§ 2 & 2342(a) - Aiding and Abetting, and Trafficking in Contraband Cigarettes;

CTS 48 - 50: 18 U.S.C. §§ 2 & 2320(a) - Aiding and Abetting, and Trafficking in Counterfeit Cigarettes;

CTS 51 - 57: 18 U.S.C. §§ 2 & 1343 - Aiding and Abetting, and Wire Fraud;

CTS 58 - 61: 18 U.S.C. §§ 2 & 1341 - Aiding and Abetting, and Mail Fraud;

CT 62: 18 U.S.C. § 1001 - Material False Statements and Representations;

CT 63: 18 U.S.C. § 1956(h) - Conspiracy to Launder Monetary Instruments;

CTS 64 - 90: 18 U.S.C. §§ 2 & 1956 (a)(1)(A)(i) - Aiding and Abetting, and Laundering Monetary Instruments; and

CTS 91 - 92: 18 U.S.C. §1956 (a)(2)(A) - Laundering Monetary Instruments

18:982 - Notice of Criminal forfeiture.]

THE GRAND JURY CHARGES THAT:

A true copy of the original, I certify.

Clerk, U. S. District Court

By _____

Deputy

## INTRODUCTION

At all times relevant to this indictment:

1.

primarily, the diversion of cigarettes not intended for domestic consumption, namely contraband cigarettes, as further defined below, and counterfeit cigarettes, also further defined below.

also referred to as the Organization. The smuggling Organization was centered in the El Paso, Texas, area. The primary objective of the Organization was to generate income by illegally avoiding the payment of all applicable federal taxes and duties, and of all state taxes on the goods in which the Organization smuggled and trafficked.

The Organization employed different techniques to smuggle and introduce into the commerce of the United States contraband and counterfeit cigarettes. These included, but were not limited to, the manipulation of the United States Customs Service (USCS)[1] in-bond system, further described below. The Organization modified and adapted its techniques and the goods which would be trafficked in direct response to any measurable success by law enforcement in curtailing its illegal activities. The Organization did not limit its smuggling activities to cigarettes. It also smuggled liquor, leather goods and textiles, among other things.

also used different entities in furtherance of the Organization's objectives. These included, but were not limited to:

has no known legitimate source of income. Further,

2.

Organization and was

scheme.

cigarettes in El Paso, Texas, and the transportation of the contraband and counterfeit cigarettes. Additionally, once the cigarettes were shipped in interstate commerce,

distribution of the cigarettes to t

---

[1]During most of the time frame of the dates alleged in this indictment, the United States Customs Service (USCS), was an agency of the Department of the Treasury. However, on March 1, 2003, the United States Customs Service became an agency of the Department of Homeland Security. The former USCS is of the date of this indictment known as Immigration and Customs Enforcement (ICE).

3.

has ne-known legitimate source of income.

4.                              was another member of the Organization
                                                and
documents necessary to manipulate the United States Customs Service (USCS) in-bond
system for the Organization.

has no known legitimate source of income.

5.                                        was another member of the Organization.
            primary role in the organization was to act as th
                              has no known legitimate source of income.

6.
were other members of the Organization
                  They, like the other members, were present during the Organization's meetings,

each aided and abetted the Organization in carrying out its illegal objectives.
                              and                have no known legitimate source of income.

7.

Organization's criminal activity.
secure, through fraudulent documentation, t]
USCS.

8.    DEAN MILLER was                        's California partner and they purchased large
quantities of counterfeit cigarettes from Asia, smuggled the cigarettes into the United States,
and transported and attempted to transport the cigarettes in interstate commerce for
distribution in the United States. DEAN MILLER used an entity named Cardservices DM to
further the Organization's objectives.

9.                                        aided and attempted to aid the Organization's efforts in
manipulating the "in-bond" system through the use of fraudulent documentation.
                  used an entity named                        further the Organization's
objectives.

3

10.        _    . was one of the _____ _ ___ ___                He owned and
   operated $  .            , and did business as :
                       . and ‾                    purchased, received and sold
   counterfeit and contraband cigarettes supplied by the Organization.

11.              was one of the ___ .__                          He operated the
   _                             : ‘ purchased, received and sold
   counterfeit and contraband cigarettes supplied by the Organization.  ]       . also used an
   entity named:       ___y _____ __ ___ _      .      .

12.                       as one of the ‾                       es. He worked
                         .... _ ... . .. .. ..          and also purchased,
   received and sold counterfeit and contraband cigarettes supplied by the Organization.
              ... also did business as ‾                  (sometimes referred to as: ‘
            :‘.

13.  _ _____                was one of the ‾                          .e owned and
   operated .
   purchased, received and sold contraband cigarettes supplied by the Organization.
              ; also trafficked in counterfeit cigarettes.

14.                        worked for          and assisted in the purchase,
   receipt and sale of contraband cigarettes supplied by the Organization. ‘     .. also trafficked
   in counterfeit cigarettes.

15.       .          ⊥       . ‾ . .... .
   company.              .ne Organization was to coordinate and direct the diversion of
   contraband cigarettes from USCS in-bond status.

16.  _ _____ ___          ___ __ ___ .               ‾ . P
   company and provided the Organization with transportation services for large quantities ..
   contraband and counterfeit cigarettes.

17.             .        .  ▾ ___ __ __ _ __ __,                     .  ... ..
   and abetted the Organization in transporting a load of contraband cigarettes.

18.  A container is a reference to an instrument similar to a trailer, in its use and configuration,
   used to transport bulk cargo.  It is capable of transporting up to 1,000 cases of cigarettes.

19.  A "case" of "contraband" cigarettes contains 50 cartons of cigarettes.  A carton of cigarettes
   contains ten packages.  Each package contains 20 individual cigarettes.  Therefore, one case
   of contraband cigarettes typically contains 10,000 individual cigarettes.

20.     A "case" of "counterfeit" cigarettes typically contains 60 cartons of cigarettes. A carton of cigarettes contains ten packages. Each package contains 20 individual cigarettes. Therefore, one case of counterfeit cigarettes typically contains 12,000 individual cigarettes.

21.     Contraband cigarettes is statutorily defined term which means a quantity in excess of 60,000 cigarettes (generally six cases of cigarettes) which bear no evidence of the payment of applicable state cigarette taxes in the state where such cigarettes are found, if such state requires a stamp, impression or other indication to be placed on packages or other containers of cigarettes to evidence payment of cigarette taxes ... Title 18 U.S.C. § 2341(2).

22.     According to the Bureau of Alcohol, Tobacco, and Firearms (ATF), all the states discussed in this Indictment, whose cigarette taxes were not paid, namely: Texas, California and New York, required a state cigarette tax stamp on the cigarette packages. Also, according to ATF, every state in the United States imposes a state tax on cigarettes.

23.     In 2002, the state cigarette tax on cigarettes sold in Texas was .41 cents per package. Therefore, the taxes on a case of contraband cigarettes if sold in the state of Texas would equal $ 205.00 and the taxes on a case of counterfeit cigarettes, if sold in the state of Texas, would equal $246.00.

24.     In 2002, the state cigarette tax on cigarettes sold in California was .87 cents per package. Therefore, the taxes on a case of contraband cigarettes if sold in the state of California would equal $435.00 and the taxes on a case of counterfeit cigarettes, if sold in the state of California, would equal $522.00.

25.     In 2002, the state cigarette tax on cigarettes sold in New York was $ 1.50 per package. Therefore, the taxes on a case of contraband cigarettes, if sold in the state of New York, would equal $750.00 and the taxes on a case of counterfeit cigarettes if sold in the state of New York, would equal $900.00.

26.     A counterfeit trademark is a spurious (false, non-genuine) trademark, which is identical to, or substantially indistinguishable from a federally registered trademark. Title 15 U.S.C. § 1127.

27.     "Marlboro," "Marlboro Lights," and "Marlboro Menthols" are each a trademark registered with the U.S. Patent and Trademark Office.

28.     In 2002, the retail value of legitimate Marlboro's and Marlboro Lights in the state of Texas was approximately $1,689.00 a case.

29.     In 2002, the retail value of legitimate Marlboro's and Marlboro Lights in the state of California was approximately $1,919.00 a case.

30.  In 2002, the retail value of legitimate Marlboro's, Marlboro Lights and Marlboro Menthol in the state of New York was approximately $2,234.00 a case.

31.  The Organization referred to counterfeit cigarettes, cigarettes bearing a counterfeit trademark, in coded language and called them among other things as "Chinos" (a reference to their Chinese origin), "Miles" (a reference to a marketing promotion for cigarettes legitimately sold in the U.S.), "Pirated and/or Pirates," "Number Twos" and "domestics."

32.  The Organization referred to contraband cigarettes in coded language among other things as "made under authority," "duty free," and "U.S. Blend."

33.  "Excise tax" refers to a federal or state tax imposed on the manufacture and distribution of certain non-essential consumer goods, such as cigarettes.

34.  A "duty" refers to, among other things, a tax on imported merchandise.

35.  The contraband cigarettes, which are the subject of this indictment, entered the United States through the in-bond system. The in-bond system, as further explained below, involves cargo entering the United States without appraisal of value or payment of duties. An in-bond entry is required when cargo transits to another U.S. location for formal entry, transits the U.S. destined to another country, or is immediately exported. 19 C.F.R. § 10.31 and Part 18. For example, under the "in-bond system," cargo can originate from China, enter in-bond through Los Angeles, California, and transit in-bond to El Paso, Texas, and then can be exported to Mexico. Many of the cigarettes, discussed in this indictment, instead of being exported from the United States were diverted and sold in various cities of the United States without payment of the applicable state and federal cigarette taxes and USCS duties.

36.  "In-Bond" refers to the status of merchandise admitted provisionally into the country without payment of duties, either for storage in a bonded warehouse or for trans-shipment to another point, where duties will eventually be imposed or from where the merchandise will be exported.

37.  "Bonded Warehouse" refers to a warehouse authorized by USCS for storing merchandise on which payment of duties is deferred until the importer pays the duties or until USCS releases the merchandise.

38.  "Bonded Merchandise" is any foreign product, good and commodity that is allowed to enter the United States in "in bond" status.

39.  "Customs Broker" refers to the importer's agent, licensed by USCS, to enter and clear goods through USCS.

40. "Bill of Lading" refers to a document that a transportation company possesses, acknowledging that it has received goods, which temporarily serves as the title during the transport of the merchandise.

41. "Foreign Trade Zone" (FTZ) is a restrictive access site, in or adjacent to a port of entry, used to expedite and encourage foreign commerce and other purposes. Goods in a FTZ are not considered to be in the commerce of the United States.    —.

42. A USCS Form 7512 is a multiple use document used for: "T & E", a Transportation and Exportation document; "I.E.", an Immediate Exportation document; and "I.T.", an Immediate Transportation entry document.

43. "T & E" refers to a USCS Transportation and Exportation document which allows for the movement of bonded merchandise from a point of departure to the port for release to be exported out of the United States.    ·    —.

44. "I.E." refers to a USCS Immediate Exportation entry document which allows for foreign merchandise arriving at one U.S. port to be exported from the same port without payment of duty.

45. "I.T." refers to a USCS Immediate Transportation entry document, which allows foreign merchandise arriving at one U.S. port to be transported in-bond to another U.S. port where a superseding entry will be filed by the broker or importer.

46. "Pedimento" refers to an official Mexican document which allows for the importation and exportation of merchandise upon compliance with Mexican customs law.

47. The Republic of Mexico has stringent requirements for the importation of cigarettes. According to Mexican Customs, an importer of cigarettes into Mexico must make an application and have the application approved by the Mexican Government. The importer needs to belong to the Importers Census List. There is a list of authorized Mexican Customs ports of entry for cigarettes. The list includes the following ports: Cancun, Ciudad Hidalgo, Colombia, Manzanillo, Nuevo Laredo, Subteniente Lopez, Tijuana, Veracruz, and Aeropuerto Internacional de Mexico/International Airport in Mexico City.

Ciudad Juarez is not an authorized port of entry for cigarettes. All cigarettes imported into Mexico are subject to a tax of approximately two hundred and fifty percent (250%).

7

## COUNT ONE
### [18 U.S.C. §§ 371, 545, 2342 (a) & 2320(a)]
### (Conspiracy to Smuggle Cigarettes into the United States, Traffic in Contraband Cigarettes and Traffic in Counterfeit Cigarettes)

The Grand Jury re-alleges and incorporates the Introduction as if fully set out herein.

Beginning on or about July 2000, and continuing through and including on or about December 2003, in the Western District of Texas, the Southern District of California, the Central District of California, the Western District of New York, the Southern District of Texas, the District of New Jersey, the Southern District of Florida, the Republic of Mexico, Taiwan, and elsewhere, the Defendants,

**DEAN MILLER,**

knowingly and wilfully did combine, conspire, confederate and agree together, and with each other, with other unindicted co-conspirators, and with others both known and unknown to the grand jury, to commit the following offenses against the United States, that is:

8

1.)   to fraudulently and knowingly import and bring into the United States merchandise, namely, contraband and counterfeit cigarettes, contrary to law, and receive, conceal, buy, sell and facilitate the transportation, concealment and sale of such contraband and counterfeit cigarettes after importation, knowing the contraband and counterfeit cigarettes to have been imported and brought into the United States contrary to law, in violation of Title 18, United States Code, Section 545;

2.)   to unlawfully and knowingly ship, transport, receive, possess, sell, distribute and purchase contraband cigarettes, as that term is defined in Title 18, United States Code, Section 2341(2), namely: a quantity in excess of 60,000 cigarettes, which bear no evidence of the payment of applicable state cigarette taxes in the state where such cigarettes are found, namely the states of Texas, California, and New York, and said states require a stamp, impression and other indication to be placed on packages of cigarettes to evidence the payment of cigarette taxes, in violation of Title 18, United States Code, Section 2342(a); and

3.)   to intentionally traffic and attempt to traffic in goods, namely, cigarettes, and did knowingly use a counterfeit mark on and in connection with such cigarettes, in violation of Title 18, United States Code, Section 2320(a).

## OVERT ACTS

In furtherance of the conspiracy, and to effect the objects thereof, at least one of the co-conspirators herein committed one or more of the following overt acts, among others, in the Western District of Texas, the Southern District of California, the Central District of California, the Western District of New York, the Southern District of Texas, the District of New Jersey, the Southern District of Florida, the Republic of Mexico, Taiwan and elsewhere:

9

1. On or about July 11, 2000,                    opened a bank account in El Paso, Texas, in the name of

2. On or about December 7, 2000,                opened a bank account in El Paso, Texas, in the name of listing the president as

3. On or about April 2001,

   subsequently used for
                            paid  the

4. On or about July 5, 2001, paperwork was filed in the

                                              for th

5. On or about August 2001,
                        collect payment for cigarettes (contraband) previously shipped to an unindicted co-conspirator.

6. On or about August 27, 2001,                    made a deposit of
                            is bank account in El Paso, Texas.

7. On or about August 28, 2001, a wire transfer in the amount              vas made by                          from a bank account in El Paso, Texas, to a bank account of

8. On or about September 8, 2001, a
                                from                        bank account in El Paso, Texas.

9. On or about September 10, 2001,                          made deposits of
                            to his bank account in El Paso, Texas.

10. On or about September 11, 2001, a wire transfer in the amount of
    was made by                          , from a bank account in El Paso, Texas, to a bank account of a

11.  On or about September 13, 2001,        — — .—           made a deposit of
     his bank account in El Paso, Texas.

12.  On or about September 13, 2001, a wire transfer in the amount of
     was made by ]                      from a bank account in El Paso, Texas,
     to a bank account of a

13.  On or about September 22, 2001                  ia, was paid
     ) from ;                    bank account in El Paso, Texas.

14.  On or about September 28, 2001,           sent a shipment of
     approximately      cases of contraband cigarettes to

15.  Beginning on or about October 9, 2001 and continuing through and including
     on or about October 13, 2001,

16.  On or about October 26, 2001, a check in the amount of         was
     issued from the checking account of I
     in El Paso, Texas, made payable to an El Paso, Texas, supplier of bonded
     merchandise.

17.  On or about February 11, 2002, a check in the amount of S
     issued from the checking account c
     which is a bank account of                    [, made payable to an El
     Paso, Texas, supplier of bonded merchandise.

18.  On or about March 24, 2002,                    opened a bank account
     in the name of                    using social security account number

19.  On or about March 27. 2002, :              issued a check in the
     amount of              )ayable to an El Paso, Texas, supplier of bonded
     merchandise.

20.  On or about April 4, 2002, an international wire transfer in the amount of
                      , from a bank account in El
     Paso, Texas

21.  On or about April 5, 2002, an international wire transfer in the amount of
                 's made by ,              , from a bank account in El
     Paso, Texas, to ;

11

22.  On or about April 9, 2002, ⁻ ⁻                      issued a check in the
     amount of              nade payable to an El Paso, Texas, supplier of bonded
     merchandise.

23.  On or about May 2, 2002, in the state of                             ,
                              ⁻ accepted delivery of a shipment of
     ___.      ises of contraband cigarettes sent by Organization from El Paso, Texas.

24.  On or about May 17, 2002, a tractor trailer containing        es of contraband

25.  On or about June 18, 2002, ⁻                                  -- ---

26.  On or about June 20, 2002, in the state of
     ⁻              and                    accepted delivery of a shipment of
          cases of contraband cigarettes sent by the Organization from    ⁻ᴜᴏ,

27.  On or about June 20, 2002, in the state of
                    . accepted delivery of a shipment of        es of contraband
     cigarettes sent by the Organization from ⁻

28.  On  or  about  July  1,  2002,                            and ⁻

29.  On or about July 1, 2002, a charge in the amount o        ᴠas made to the
     bank card of ⁻ ⁻

30.  On or about July 16, 2002, ⁻

31.  On or about July 17, 2002, a check in the amount          ᴠas issued
     from a checking account of              ᴹade payable to an El
     Paso, Texas, supplier of bonded merchandise.

32.  On or about July 17, 2002, a check in the amount o   .  . .   as issued
     from a checking account of              , made payable to an El
     Paso, Texas, supplier of bonded merchandise.

12

33.  On or about July 18, 2002,                               telephonically contacted
                                to discuss the status of a container (of counterfeit
     cigarettes).

34.  On or about July 19, 2002,                             telephonically contacted
                                 to discuss the status of a container (of counterfeit
     cigarettes).

35.  On or about July 19, 2002, a wire transfer in the amount c                    as
     made or was caused to be made by
                   fron            to El Paso, Texas, to the account of
                            , which is a bank account of

36.  On or about July 20, 2002, in the state o
     accepted delivery of a shipment (        ases of contraband cigarettes sent by
     the Organization from El Paso, Texas.

37.  On or about July 20, 2002, in the state of
                                                            accepted delivery
     of a shipment                                         by the Organization
     from El Paso, Texas.

38.  On or about July 20, 2002, in the state of
                                     and              loaded a vehicle
     with                    , which contain       case, of counterfeit
     "Marlboro Lights" cigarettes.

39.  On or about July 20, 2002, in the state of
                                     and
                                            , of counterfeit "Marlboro"
     cigarettes.

40.  On or about July 21, 2002,                      telephonically contacted
                                 to inform him that the
     Department had seized the container (which consisted of
     counterfeit "Marlboro" cigarettes).

41.  On or about July 22, 2002,                     shipped to an unindicted co-
     conspirator in the state
     contraband cigarettes. These cigarettes were sent from El Paso, Texas.

13

42.  On or about July 22, 2002,                          provided
     with the shipment tracking number for the

43.  On or about July 22, 2002,              telephonically told
                    he had wire transferred

44.  On or about July 24, 2002, **DEAN MILLER** and
     telephonically discussed the wire transfer of the "first $25,000.00."

45.  On or about July 24, 2002,              telephonically contacted
                    to learn whether .

46.  On or about July 25, 2002,              telephonically told
                    he had just sent          another

47.  On or about July 25, 2002,              telephonically told
                    that he owed                          ) or
     ...                    for the "Duty Free" (contraband cigarettes) and the
     "domestics" (counterfeit cigarettes)          had previously sent him.

48.  On or about July 26, 2002, in the state of
                    and              accepted delivery of a shipment of
                    nt by the Organization from El Paso,
     Texas.

49.  On or about July 26, 2002, in the state c
     and              accepted delivery of a shipment of
     contraband cigarettes sent by the Organization from El Paso, Texas.

50.  On or about July 26, 2002,              obtained  a

     smuggling and distribution of cigarettes.

51.  On or about July 27, 2002,              telephonically instructed
                    to falsify a bill of lading for the Organization.

52.  On or about July 27, 2002,              , delivered
     a check in the amount of                          for
     transportation service...

14

53.   On or about July 28, 2002,                          _   telephonically contacted
                    and offered to broker the return of the seized container

54.   On or about July 29, 2002, **DEAN MILLER** telephonically contacted
                    to inform him that the shipping company needed a
___. contact telephone number.

55.   On or about July 30, 2002,                     and
      telephonically discussed the availability of "Miles" (counterfeit cigarettes).

56.   On or about July 30, 2002, **DEAN MILLER** telephonically told
                    that the air bill was being sent by overnight express (FedEx) to
      the Leo Collins address and that it should arrive the following day.

57.   On or about July 31, 2002,                          telephonically told
                    he had put                             account
      and would send more tomorrow.

58.   On or about July 31, 2002,                     telephonically told
                    that the                             ready been sent to


59.   On or about July 31, 2002,                     telephonically contacted
      **DEAN MILLER** to discuss the possibility of re-routing the container (of
      counterfeit cigarettes) from Long Beach, California, to New Jersey.

60.   On or about July 31, 2002,


61.   On or about July 31, 2002, **DEAN MILLER** telephonically contacted
                    to confirm the receipt of a FedEx package which
      contained an original bill of lading and a commercial invoice for a shipment
      of 950 cases of "toys" (counterfeit cigarettes).

62.   On or about July 31, 2002,                     telephonically contacted
      **DEAN MILLER** to inform him that he was having the container (of
      counterfeit cigarettes) shipped back to Shanghai, China, and
                    told **DEAN MILLER** he was doing this to avoid inspection (by
      USCS) and further admitted to **DEAN MILLER** that he lied to the
      representative of the shipping company.

15

63.    On or about July 31, 2002,    telephonically told that he would send the "fax" when he received the FedEx package containing the bill of lading.

64.    On or about July 31, 2002,    telephonically asked an unindicted co-conspirat    again so he could ship samples (of counterfeit and contraband cigarettes).

65.    On or about August 1, 2002,    telephonically instructed an unindicted co-conspirator to contact him when he received the samples (of counterfeit and contraband cigarettes).

66.    On or about August 1, 2002, **DEAN MILLER** telephonically told to FedEx to **MILLER** originals of all the paperwork (of the counterfeit cigarettes manifested as toys).

67.    On or about August 1, 2002,    telephonically told that he would have    00) in account by tomorrow morning, and    said he had another order (of cigarettes) ready, but could not send it until paid (for a previous shipment).

68.    On or about August 1, 2002,    telephonically told he had a    or some "product, domestics" (counterfeit cigarettes) and    stated he was getting those (counterfeit cigarettes), "maybe next week".

69.    On or about August 1, 2002,    telephonically informed about two containers (of counterfeit cigarettes)

70.    On or about August 1, 2002,    and telephonically discussed the progress in establishing an internet site for the purpose of distributing "duty frees" (contraband cigarettes) and "domestics" (counterfeit cigarettes).

71.    On or about August 5, 2002,    and telephonically discussed    wirin

72.    On or about August 5, 2002, an unindicted co-conspirator telephonically asked if he l    the cigarettes ( samples of counterfeit and contraband cigarettes).

16

63.   On or about July 31, 2002, _____ telephonically told _____ that he would send the "fax" when he received the FedEx package containing the bill of lading.

64.   On or about July 31, 2002, _____ telephonically asked an unindicted co-conspirator _____ he could ship samples (of counterfeit and contraband cigarettes).

65.   On or about August 1, 2002, _____ telephonically instructed an unindicted co-conspirator to contact him when he received the samples (of counterfeit and contraband cigarettes).

66.   On or about August 1, 2002, _____ telephonically told _____ originals of all the paperwork (of the

67.   On or about August 1, 2002, _____ telephonically told _____ that he would have _____ in _____ account by tomorrow morning, and _____ another order (of cigarettes) ready, but could not send it until paid (for a previous shipment).

68.   On or about August 1, 2002, _____ telephonically told _____ he had a _____ some "product, domestics" (counterfeit cigarettes) and _____ ie was getting those (counterfeit cigarettes

69.   On or about August 1, 2002, _____ telephonically informed _____ about two containers (of counterfeit cigarettes) that had been held

70.   On or about August 1, 2002, _____ and _____ (contraband cigarettes) and "domestics" (counterfeit cigarettes).

71.   On or about August 5, 2002, _____ telephonically discussed

72.   On or about August 5, 2002, in unindicted co-conspirator telephonically asked the cigarettes ( samples of counterfeit and contraband cigarettes).

16

73. On or about August 14, 2002,                          telephonically contacted
                          and discussed the next shipment of contraband cigarettes
and how to defeat detection of their scheme by USCS, namely shipping
everything in-bond and clearing them at a location where the arrangements had
been "fixed."

74. On or about August 19, 2002,                          telephonically told
                          to begin sending all wires (wire transfers of funds) to
a bank account

75. On or about August 19, 2002,                          telephonically told
                          he needed "Product" (contraband cigarettes).

76. On or about August 20, 2002,                          [ telephonically told
                          that after he sells the cigarettes he wires the money to

77. On or about August 20, 2002,                          telephonically told
                          he was going to
that              could send (wire transfer)

78. On or about August 21, 2002,
USCS officials in an attempt to secure the release o
cigarettes seized from the Organization.

79. On or about August 22, 2002,
                          traveled to

80. On or about August 22, 2002, a charge in the amount o              as made to
the bank card of

81. On or about August 22, 2002, in the state o
and                          accepted delivery of a shipment o
of contraband cigarettes sent by the Organization from El Paso, Texas.

82. On or about August 22. 2002. in the stat
                          accepted delivery of a
shipment o          contraband cigarettes sent by the Organization from
El Paso, Texas.

83. On or about August 22, 2002,                          and
                          telephonically discussed how much money to

17

84.    On or about August 22, 2002,                                    obtained a cashier's
       check in the amount                      , made payable to

85.    On or about August 22, 2002,                                    , obtained a

86.    On or about August 23, 2002,                      telephonically told
                                 that he would let him talk to
       so that          could explain what (documents)                 needed.

87.    On or about August 23, 2002,                                    telephonically told

88.    On or about August 26, 2002,                      and **DEAN MILLER**
       telephonically discussed ordering another container (of counterfeit cigarettes)
       from an unindicted co-conspirator in Asia and each paying $80,000.00 for the
       container.

89.    On or about August 27, 2002,                                    telephonically contacted
                        and instructed him to send the package to:

90.    On or about August 27, 2002,                      telephonically told
                        that he needed a last name and                 said

91.    On or about August 27, 2002,                                    telephonically told
                        that they were going to be using "overnight."

92.    On or about August 27, 2002,                                    telephonically
       described to                      what was being sent, namely:

93.    On or about August 27, 2002,                                    sent, through the

94.    On or about August 27, 2002,                                    telephonically told
       **DEAN MILLER** he wanted "all reds" (counterfeit "Marlboro" cigarettes)

18

and "no Lights" (counterfeit "Marlboro Lights") and to make sure they were "updated." (The reference to "updated" is to the latest packaging that Philip Morris is utilizing).

95.  On or about August 27, 2002,            . telephonically contacted         _ to arrange transportation services for cigarettes (751 cases of contraband cigarettes).      —.

96.  On or about August 29, 2002,          telephonically told         that           had wired

97.  On or about August 29, 2002,         telephonically asked        if it was        · they owed.

98.  On or about August 29, 2002,         telephonically told ·        that        was responsible for wiring the money derived from       and       sales.

99.  On or about August 29, 2002,         telephonically told        , that they needed to get the money owed to him because he,        had a container of "Miles" (counterfeit cigarettes) coming within 10 days.

100.  On or about August 30, 2002, a check in the amoun.. .. .        , which is from a checking account of        , which is a bank account of,        , made payable to an El Paso, Texas, supplier of bonded merchandise.

101.  On or about August 30, 2002,        . telephonically told        that he had just wired anothei      .. .. (. .,- - - - - -,.

102. .  On or about September 2, 2002, an

103.  On or about September 3, 2002,        telephonically told        that they still had "Marlboro Menthols," because they could not sell them;        added they were no good and it would take a while to get rid of them.

19

104. On or about September 3, 2002,                                    telephonically asked
how much they were supposed to wire and
said that they were supposed to wire

105. On or about September 4, 2002,                          telephonically asked
for the total (total deposits) and
said that until the previous day it wa

106. On or about September                                 telephonically
told                      that there were five deposits and he would read
them out to                      The first one (deposit) was
instructed                      to put it under                    said it
The second one (deposit) was                    ). The third one (deposit) was
was from
said it was from
The fourth one (deposit) was                    said it was
from                      The fifth one (deposit) was
said it was from

107. On or about September 4, 2002,                          telephonically
he would identify each (payment) and mark them

108. On September 5, 2002,                          telephonically asked
how much they wired after the 14,000 (                    on 8/22
(August 22nd).                      said that on 8/26 (August 26th) a bank in
8/30 (August 30th),                      was wired to
in                      and on 9/4 (September 4th)
repeated the information and then included a transaction on 8/27 of
changed the amount of 9/4 to                    that on 8/12 (August 12th)
telephonically told
was sent to a bank in El Paso, Texas.

109. On or about September 5, 2002,                          telephonically told
that with this system of "in-bond" they (contraband
cigarettes) could be there in two days.

110. On or about September 5, 2002,                          telephonically told
he had sent him                      yesterday.

111. On or about September 6, 2002,                          telephonically told
to go to the bank and get a cashier's check for

112.    On or about September 6, 2002,                                    —    telephonically
contacted                                        and informed him he had a new
system where they will not have any problems on the road.

113.    On or about September 6, 2002,                                        telephonically
contacted a travel agency in reference to a flight to                        for
September 8, 2002.

114.    On or about September 6, 2002,                            telephonically told
                                    that he had some blank bills of lading that they could
complete.

115.    On or about September 9, 2002,
                        telephonically discussed completing paperwork for a shipment of
contraband cigarettes.

116.    On or about September 9, 2002, in the conversation discussed in the previous

117.    On or about September 10, 2002, $             $ telephonically told

118.    On or about September 10, 2002,                                .telephonically told
                                    that he would send him
transportation for the

119.    On or about September 11, 2002,                            telephonically told
                                    that the drivers were on the road now and that he had
                                                    previous request and
instructions.

120.    On or about September 11, 2002,                                telephonically
contacted

121.    On or about September 11, 2002,                                and
                            telephonically discussed
shipment of cigarettes and to follow this shipment to the port of exit.

122.    On or about September 11, 2002,                                telephonically

discussed and agreed with
cases should be returned

123.    On or about September 11, 2002,                    [ telephonically spoke
        to                                    advised                to send
        the truck back (to El Paso)

124.    On or about September 13, 2002.                                telephonically
        instructed                       to

125.    On or about September 13, 2002,

126.    On or about September 19, 2002,                    telephonically told
                                                should be the first to meet

127.    On or about September 19, 2002,                    telephonically told
                                                           would
        accompany

128.    On or about September 24, 2002,                    telephonically stated
        to                                he was trying to get rid of the "miles"(counterfeit
        cigarettes from a previous shipment).

129.    On or about September 26, 2002,                    telephonically said
        to                            they owed            which should clear
        everything up.                      said he wanted the money to go to the account

130.    On or about October 2, 2002,                       [ telephonically spoke to
                                        to discuss the procedure to be used for a
        shipment of cigarettes (contraband)

131.    On or about October 2, 2002,                       telephonically spoke to
        an El Paso, Texas, cigarette supplier concerning the acquisition o
        of cigarettes (contraband).

132.    On or about October 2, 2002,                    and
                            telephonically discussed the procedure for removing the

cases (of contraband cigarettes) from the in-bond system.

133.  On or about October 3, 2002,

payment of the

134.  On or about October 3, 2002, the Organization caused an "I.T.", to be filed with the USCS which reflected that 500 cases of cigarettes, "for export only" which originated in a Miami, Florida, FTZ, were destined for a bonded warehouse in Buffalo, New York.

135.  On or about October 3, 2002,                                     asked
                    who he should

136.  Beginning on or about October 3, 2002 and continuing through and including on or about October 13, 2002,

137.  On or about October 8, 2002,                          telephonically asked
                    if he would wire the money to his American account.

138.  On or about October 10, 2002,                          telephonically told
                    that          and          should pay in advance
      before getting more product (contraband cigarettes).

139.  Beginning on or about October 22, 2002 and continuing through and including on or about October 26, 2002,                          leased a car, listing

140.  On or about October 22, 2002,                          and
                    went to a bonded warehouse in                          re an
      employee of the warehouse was told that they,                          and
                    would return the next day with a driver
      of contraband cigarettes).

141.  On or about October 24, 2002,                          and
                    went to a l                          tempted
      to secure the release of the          ases of cigarettes (contraband).

142.  On or about                          cigarettes were removed from

23

143.

144.

145.

146.

147.

148.

All in violation of Title 18, United States Code, Section 371.

## COUNT TWO
[18 U.S.C. §§ 1349, 1343 & 1341]
(Conspiracy to Commit Wire Fraud and Commit Mail Fraud)

The Grand Jury re-alleges and incorporates the Introduction and Overt Acts alleged in Count

One as if fully set out herein.

Beginning on or about July 2000, and continuing through and including on or about July 2003,

in the Western District of Texas, the Southern District of California, the Central District of California,

the Western District of New York, the Southern District of Texas, the District of New Jersey, the

Southern District of Florida, the Republic of Mexico, Taiwan, and elsewhere, the Defendants,

**DEAN MILLER,**

knowingly and wilfully did combine, conspire, confederate and agree together, and with each other,

with other unindicted co-conspirators, and with others both known and unknown to the grand jury,

to commit the following offenses against the United States, that is:

1.)    to knowingly devise and intend to devise a scheme and artifice to defraud the states of Texas,

California and New York, and the USCS of all applicable duties and taxes for cigarettes, both

contraband and counterfeit, and for the purpose of executing and attempting to execute such

scheme and artifice, did transmit and cause to be transmitted by means of a wire

communication, namely a telephonic conversation, in interstate and foreign commerce, certain

signs, signals and sounds, which wire communication related to the shipment, transport,

25

receipt, possession, sale, distribution and purchase of contraband and counterfeit cigarettes,

in violation of Title 18, United States Code, Section 1343; and

2.)    to knowingly devise and intend to devise a scheme and artifice to defraud the states of Texas,

California and New York, and the USCS of all applicable duties and taxes for cigarettes, both

contraband and counterfeit, and for the purpose of executing and attempting to execute such

scheme and artifice did knowingly send and cause to be sent, delivered and moved by the

Postal Service and a commercial interstate carrier, namely: FedEx and DHL, according to the

directions thereon, a matter and thing, namely: samples of contraband and counterfeit

cigarettes and documents, to use in defrauding the states of Texas, California and New York,

and the USCS, in violation of Title 18, United States Code, Section 1341.

All in violation of Title 18, United States Code, Section 1349.


## SCHEME AND ARTIFICE TO DEFRAUD

The Defendants used the following means for the purpose of furthering the objects of the

conspiracy, and for the purpose of executing the scheme and artifice to defraud:

The Defendants trafficked in counterfeit and contraband cigarettes. The Defendants did not

pay the applicable taxes to the states of Texas, California and New York, and applicable duties and

taxes to USCS on the contraband and counterfeit cigarettes.

The Defendants purchased the counterfeit cigarettes from manufacturers in Asia, namely

China and Taiwan. The Defendants paid for the counterfeit cigarettes with funds which were wire

transferred within the United States and from the United States to Taiwan. Further, the Defendants

used wire communications, including telephonic and facsimile communications, to facilitate the

purchase, shipment and delivery of counterfeit cigarettes. The counterfeit cigarettes were then

26

shipped on international waters, by containers on ships, from Asia to the United States. The counterfeit cigarettes arrived at the port of entry in Long Beach, California, among other places.

To prevent the detection of the shipments as counterfeit cigarettes by the USCS, the Defendants caused the shipments to be manifested as other merchandise, for example "toys" and "plastic goods." When the counterfeit cigarettes arrived at the port of entry, the counterfeit cigarettes were unloaded, smuggled and distributed in the United States.

The Defendants also shipped, transported, received, possessed, sold, distributed and purchased contraband cigarettes. The Defendants obtained the contraband cigarettes from Customs brokers, in El Paso, Texas, and Miami, Florida, who were authorized to possess cigarettes which were in "in-bond" status. The Defendants paid for the contraband cigarettes with funds from their bank accounts. Further, the Defendants used wire communications, including telephonic and facsimile communications, to facilitate the trafficking of contraband cigarettes. The Defendants, after obtaining possession of the cigarettes from the brokers, would remove the cigarettes from "in-bond" status, contrary to law, and smuggle the cigarettes to New York and California and into the commerce of the United States for distribution. The Defendants from New York paid for the contraband cigarettes with funds which were wire transferred from banks in New York to banks in El Paso, Texas, and the Republic of Mexico.

The Defendants attempted to manipulate and manipulated the USCS in-bond system. The Defendants attempted to achieve this by making false and material statements and representations to USCS, by presenting altered and falsified documents, and by submitting fraudulent "pedimentos" to USCS. These documents reflected that the contraband cigarettes had been exported from the United States to Mexico when in truth the contraband cigarettes had been smuggled and introduced into the

27

commerce of the United States. The various documents used by the Defendants were intended to convince anyone who inspected these documents to believe that taxes and duties were not due and owing to the USCS, and or the states of Texas, California and New York on any cigarettes associated with these documents.

Further, the Defendants used the services of commercial carriers, such as FedEx and DHL, and the United States Postal Service to send documents necessary for the Organization to deceive the USCS. These carriers were also used to send samples of cigarettes.

### COUNTS THREE through SIXTEEN
### [18 U.S.C. §§ 2 & 545]
### (Aiding and Abetting, and Smuggling Contraband and Counterfeit Cigarettes)

The Grand Jury re-alleges and incorporates the Introduction and the Overt Acts alleged in Count One as if fully set out herein.

On or about the dates alleged below, in the Western District of Texas, the Western District of New York, and elsewhere, the Defendants alleged below as principals, and aiders and abettors, did fraudulently and knowingly import and bring into the United States, merchandise, namely contraband and counterfeit cigarettes, in the amounts alleged below, contrary to law; and did fraudulently and knowingly receive, conceal, buy and sell, and facilitate the transportation, concealment and sale of merchandise, namely, contraband and counterfeit cigarettes, in the amounts alleged below, after importation, knowing the contraband and counterfeit cigarettes to have been imported and brought into the United States contrary to law, namely, the Defendants caused documents to be presented to the USCS which falsely stated and represented the merchandise was to be exported from the United States, when in fact, the merchandise was introduced into the commerce of the United States, failed

28

to file required Customs entry documents, and caused false invoices to be filed for counterfeit merchandise arriving in the United States contrary to Title 18, United States Code, Section 1001, and Title 19, United States Code, Sections 1481, 1484 and 1485:

| Count | Date(s) | Defendant(s) | Number of Cases and Cigarettes |
|-------|---------|--------------|-------------------------------|
| 3 | March 20, 2002 through May 7, 2002 | | cases; )0 cigarettes |
| 4 | May 16 through May 17, 2002 | | cases; ,000 cigarettes |
| 5 | May 16 through May 17, 2002 | | ases; 000 cigarettes |
| 6 | May 16 through May17, 2002 | | ises; )00 cigarettes |
| 7 | June 4 through June 20, 2002 | | cases; 00 cigarettes |
| 8 | June 4 through June 20, 2002 | | cases; ,00 cigarettes |

| Count | Date(s) | Defendant(s) | Number of Cases and Cigarettes |
|---|---|---|---|
| 9 | June 4 through June 20, 2002 | | ases; <br><br> cigarettes |
| 10 | July 16 through July 28, 2002 | DEAN <br> MILLER and | 748 60-carton cases, 8,976,000 cigarettes |
| 11 | July 22 through August 14, 2002 | , DEAN <br> MILLER and | 793 cases; 7,930,000 cigarettes |
| 12 | July 26 through September 9, 2002 | | ases; <br> 0 <br> cigarettes |
| 13 | August 1 through August 22, 2002 | | ses; <br> )0 <br> cigarettes |
| 14 | August 1 through August 22, 2002 | | ases; <br> ,000 <br> cigarettes |
| 15 | August 1 through September 5, 2002 | | ises; <br> ,000 <br> cigarettes |

| Count | Date(s) | Defendant(s) | Number of Cases and Cigarettes |
|-------|---------|--------------|-------------------------------|
| 16 | August 19 through October 3, 2002 | | ᴗases; ₁,000 cigarettes |

in violation of Title 18, United States Code, Sections 2 and 545.

## COUNTS SEVENTEEN through FORTY SEVEN
### [18 U.S.C. §§ 2 & 2342(a)]
### (Aiding and Abetting, and Trafficking in Contraband Cigarettes)

The Grand Jury re-alleges and incorporates the Introduction and the Overt Acts alleged in Count One as if fully set out herein.

On or about the dates alleged below, in the Western District of Texas, the Central District of California, the Western District of New York, the Southern District of Texas, the Southern District of Florida, and elsewhere, the Defendants alleged below as principals, and as aiders and abettors, did knowingly and unlawfully ship, transport, receive, possess, sell, distribute and purchase contraband cigarettes, as that term is defined in Title 18, United States Code, Section 2341(2), in the approximate amount(s) alleged below, which bore no evidence of the payment of applicable state cigarette taxes for the state(s) alleged below:

| Count | Date(s) and state(s) | Defendant(s) | Number of Cases and Cigarettes |
|---|---|---|---|
| 17 | April 2001 through September 2001; Texas, California | | cases; 0,000 cigarettes |
| 18 | July 2001 through October 2001; Texas | | cases; 00,000 cigarettes |
| 19 | October 2001; Texas, California | | cases; 0,000 cigarettes |
| 20 | October 2001; Texas | | cases; 0,000 cigarettes |
| 21 | February 12, 2002; Texas | | cases; 0,000 cigarettes |
| 22 | March 8, 2002; Texas | | cases; 0,000 cigarettes |
| 23 | March 15, 2002; Texas | | cases; 0,000 cigarettes |
| 24 | March 20, 2002 through May 7, 2002; Texas, New York | | cases; 0,000 cigarettes |
| 25 | April 2002; Texas | | cases; 00,000 cigarettes |

32

| Count | Date(s) and state(s) | Defendant(s) | Number of Cases and Cigarettes |
|-------|----------------------|--------------|--------------------------------|
| 26 | April 2002 through May 2002; Texas | | cases; J0,000 cigarettes |
| 27 | May 16 through May 17, 2002; Texas, New York | | ___ cases; ___ J,000 cigarettes |
| 28 | May 16 through May 17, 2002; Texas, New York | | cases; ~~ ,000 cigarettes |
| 29 | May 17, 2002; Texas, New York | | cases; ,000 cigarettes |
| 30 | June 2002; Texas; New York | | cases; ,000 cigarettes |
| 31 | June 4 through June 20, 2002; Texas, New York | | ases; ,)00 cigarettes |
| 32 | June 4 through June 20, 2002; New York | | cases; )00 cigarettes |

33

| Count | Date(s) and state(s) | Defendant(s) | Number of Cases and Cigarettes |
|---|---|---|---|
| 33 | June 4 through June 20, 2002; New York | | cases; )00 cigarettes |
| 34 | July 1 through July 20, 2002; Texas, New York | | ᴜᴜ cases; ˉ 0,000 cigarettes |
| 35 | July 1 through July 20, 2002;  New York | | cases; )0,000 cigarettes |
| 36 | July 1 through July 20, 2002; New York | | cases; 0,000 cigarettes |
| 37 | July 16 through July 27, 2002; Texas, California | | ᴜases; )00 cigarettes |
| 38 | July 22 through July 31, 2002; Texas, New York | | ᴜases; 000 cigarettes |
| 39 | July 22 through July 31, 2002; New York | | ᴜases; ᴜ,000 cigarettes |
| 40 | July 22 through July 26, 2002; New York | | cases; ,000 cigarettes |

34

| Count | Date(s) and state(s) | Defendant(s) | Number of Cases and Cigarettes |
|-------|----------------------|--------------|-------------------------------|
| 41 | July 26 through September 9, 2002; Texas, New York | | ... cases; ...00,000 cigarettes |
| 42 | August 1 through August 22, 2002; Texas, New York | | ...ases; ...,000 cigarettes |
| 43 | August 1 through August 22, 2002; New York | | ... cases; ...,000 cigarettes |
| 44 | August 1 through September 5, 2002; New York | | ...ases; ...,.00 cigarettes |
| 45 | August 26 through October 3, 2002; Texas, New York | | ... cases; ...,.00 cigarettes |

| Count | Date(s) and state(s) | Defendant(s) | Number of Cases and Cigarettes |
|---|---|---|---|
| 46 | September 13 through October 24, 2002; Texas, New York | | ' cases; -,000 cigarettes |
| 47 | December 17 through December 20, 2002; Texas | | .. cases; ' ,000 cigarettes |

in violation of Title 18, United States Code, Sections 2 and 2342(a).

**COUNTS FORTY EIGHT through FIFTY**
**[18 U.S.C. §§ 2 & 2320(a)]**
**(Aiding and Abetting, and Trafficking in Counterfeit Cigarettes)**

The Grand Jury re-alleges and incorporates the Introduction and the Overt Acts alleged in Count One as if fully set out herein.

On or about the dates alleged below, in the Western District of Texas, the Central District of California, the Southern District of California, the Western District of New York, the District of New Jersey, and elsewhere, the Defendants alleged below as principals, and aiders and abettors, intentionally did traffic and attempt to traffic in goods, namely: cigarettes, and knowingly used counterfeit marks, as alleged below, on and in connection with such goods:

36

| Count | Date(s) | Defendant(s) | Number of cases and cigarettes; and counterfeit markings |
|---|---|---|---|
| 48 | July 16 through August 14, 2002 | **DEAN** **MILLER** | 748 60-carton cases, 8,976,000 cigarettes; "Marlboro" |
| 49 | July 1 through July 24, 2002 | | cases; cigarettes of "Marlboro Lights" of "Marlboro" |
| 50 | July 25 through August 14, 2002 | **DEAN** **MILLER** | 793 total 50-carton cases; 7,930,000 Cigarettes of "Marlboro" and "Marlboro Lights" |

in violation of Title 18, United States Code, Sections 2 and 2320(a).

## COUNTS FIFTY ONE through FIFTY SEVEN
### [18 U.S.C. §§ 2 & 1343]
### (Aiding and Abetting, and Wire Fraud)

The Grand Jury re-alleges and incorporates the Introduction and the Overt Acts alleged in

Count One and the Scheme and Artifice to Defraud alleged in Count Two as if fully set out herein.

On or about the dates alleged below, in the Western District of Texas, the Western District

of New York, and elsewhere, the Defendants alleged below as principals, and aiders and abettors,

having knowingly devised and attempted to devise a scheme and artifice to defraud the states of

Texas, California and New York, and the USCS of all applicable duties and taxes for cigarettes, both

37

contraband and counterfeit, and for the purpose of executing and attempting to execute such scheme

and artifice, did transmit and cause to be transmitted by means of a wire communication, namely

telephonic conversation(s), in interstate commerce, certain signs, signals and sounds, which wire

communication(s) occurred over the telephone numbers alleged below, relating to the shipment,

transport, receipt, possession, sale, distribution and purchase of contraband and counterfeit cigarettes:

| Count | Date | Defendant(s) | Communication occurred over Telephone Numbers |
|-------|------|--------------|-----------------------------------------------|
| 51 | July 25, 2002 | | |
| 52 | July 31, 2002 | DEAN MILLER | (915) 253-6015 and (619) 300-9004 |
| 53 | August 14, 2002 | | |
| 54 | August 23, 2002 | | |
| 55 | September 4, 2002 | | |
| 56 | September 6, 2002 | | |
| 57 | September 11, 2002 | | |

in violation of Title 18, United States Code, Sections 2 and 1343.

## COUNTS FIFTY EIGHT through SIXTY ONE
### [18 U.S.C. §§ 2 & 1341]
### (Aiding and Abetting, and Mail Fraud)

The Grand Jury re-alleges and incorporates the Introduction and the Overt Acts alleged in

Count One and the Scheme and Artifice to Defraud alleged in Count Two as if fully set out herein.

On or about the dates alleged below, in the Western District of Texas, the Western District of New York, and elsewhere, the Defendants alleged below as principals, and aiders and abettors, having knowingly devised and attempted to devise a scheme and artifice to defraud the states of Texas, California, and New York, and the USCS of all applicable duties and taxes for cigarettes, both contraband and counterfeit, and for the purpose of executing and attempting to execute such scheme and artifice, did knowingly send and cause to be sent, delivered and moved by the Postal Service and a commercial interstate carrier, namely:  FedEx and DHL, as alleged below, according to the directions thereon, a matter and thing, namely: samples of contraband and counterfeit cigarettes and documents, as alleged below, to use in defrauding the states of Texas, California, and New York, and the USCS, as alleged below:

| Count | Date(s) | Carrier | Defendant(s) | Item(s), sent, delivered and moved |
|-------|---------|---------|--------------|-------------------------------------|
| 58 | July 30, 2002 | FedEx | DEAN MILLER | bill of lading, packing list, commercial invoice, |
| 59 | July 31, 2002 | --- | | |
| 60 | August 22, 2002 | | | |
| 61 | August 27, 2002 | | | |

in violation of Title 18, United States Code, Sections 2 and 1341.

39

## COUNT SIXTY TWO
### [18 U.S.C. § 1001]
### (Material False Statements and Representations)

On or about August 30, 2002, in the Western District of Texas, in a matter within the

jurisdiction of the executive branch of the Government of the United States, namely: United States

Customs Service, an agency of the United States, the Defendant,


knowingly and willfully made a false and fictitious material statement and representation, in that the

Defendant stated: that a                        hipment of cigarettes was a special order destined for

40

for

cigarettes, in violation of Title 18, United States Code, Section 1001.

## COUNT SIXTY THREE
### [18 U.S.C. § 1956(h)]
### (Conspiracy to Launder Monetary Instruments)

The Grand Jury re-alleges and incorporates the Introduction and the Overt Acts alleged in

Count One as if fully set out herein.

Beginning on or about January 2002 and continuing through and including on or about

September 2002, in the Western District of Texas, the Southern District of California, the Central

District of California, the Western District of New York, the District of New Jersey, the Republic of

Mexico, Taiwan, and elsewhere, the Defendants,

### DEAN MILLER,

}

knowingly and wilfully did combine, conspire, confederate and agree together, and with each other,

with other unindicted co-conspirators and with others both known and unknown to the grand jury, to

commit an offense against the United States, that is they conspired to:

conduct and attempt to conduct a financial transaction, affecting interstate commerce,

knowing that the property in the financial transaction represented the proceeds of unlawful

activity and which involved the proceeds of a specified unlawful activity, that is: smuggling

41

in contraband and counterfeit cigarettes, trafficking in contraband cigarettes, trafficking in counterfeit cigarettes, mail fraud, and wire fraud with the intent to promote the carrying on of the specified unlawful activity, a violation of Title 18, United States Code, Section 1956 (a)(1)(A)(i); and

transport, transmit and transfer, and attempt to transport, transmit and transfer a monetary instrument and funds from a place in the United States to a place outside the United States, with the intent to promote the carrying on of specified unlawful activity, that is: smuggling in contraband and counterfeit cigarettes, trafficking in contraband cigarettes, trafficking in counterfeit cigarettes, mail fraud and wire fraud in violation of Title18, United States Code, Section 1956 (a)(2)(A), all in violation of Title18, United States Code, Section 1956(h).

## COUNTS SIXTY FOUR through NINETY
### [18 U.S.C. §§ 2 & 1956 (a)(1)(A)(i)]
### (Aiding and Abetting, and Laundering Monetary Instruments)

The Grand Jury re-alleges and incorporates the Introduction and the Overt Acts alleged in Count One as if fully set out herein.

On or about the dates alleged below, in the Western District of Texas, the Western District of New York, the Southern District of California, and elsewhere, the Defendants alleged below as principals, and aiders and abettors, did conduct and attempt to conduct a financial transaction, affecting interstate commerce, in the amount alleged below, knowing that the property in the financial transaction represented the proceeds of unlawful activity and which involved the proceeds of a specified unlawful activity, that is: smuggling in contraband and counterfeit cigarettes, trafficking in contraband cigarettes, trafficking in counterfeit cigarettes, mail fraud, and wire fraud with the intent to promote the carrying on of the specified unlawful activity:

42

| Count | Date | Defendant(s) | Amount of financial transaction(s) |
|---|---|---|---|
| 64 | February 11, 2002 | | |
| 65 | February 21, 2002 | | |
| 66 | March 11, 2002 | | |
| 67 | March 15, 2002 | | |
| 68 | March 27, 2002 | | |
| 69 | April 8, 2002 | | |
| 70 | April 9, 2002 | | |
| 71 | June 20, 2002 | | |
| 72 | June 20, 2002 | | |
| 73 | July 12, 2002 | DEAN MILLER | $30,000.00 |
| 74 | July 12, 2002 | DEAN MILLER | $40,000.00 |
| 75 | July 17, 2002 | | |
| 76 | July 19, 2002 | | |
| 77 | July 22, 2002 | | |
| 78 | July 25, 2002 | | |
| 79 | July 26, 2002 | DEAN MILLER | $25,000.00 |

| Count | Date | Defendant(s) | Amount of financial transaction(s) |
|-------|------|--------------|-----------------------------------|
| 80 | July 31, 2002 | | |
| 81 | July 31, 2002 | | |
| 82 | August 1, 2002 | | |
| 83 | August 2, 2002 | | |
| 84 | August 5, 2002 | | |
| 85 | August 7, 2002 | | |
| 86 | August 19, 2002 | | |
| 87 | August 22, 2002 | | |
| 88 | August 27, 2002 | | |
| 89 | September 4, 2002 | | |
| 90 | September 6, 2002 | | |

a violation of Title18, United States Code, Sections 2 and 1956 (a)(1)(A)(i).

44

## COUNTS NINETY ONE through NINETY TWO
### [18 U.S.C. § 1956 (a)(2)(A)]
### (Laundering Monetary Instruments)

The Grand Jury re-alleges and incorporates the Introduction and the Overt Acts alleged in Count One as if fully set out herein.

On or about the dates alleged below, in the Western District of Texas, Taiwan, and elsewhere, the Defendant alleged below, knowingly did transport, transmit and transfer, and attempt to transport, transmit and transfer a monetary instrument and funds, in the amount alleged below, from a place in the United States to a place outside the United States, namely Taiwan, with the intent to promote the carrying on of specified unlawful activity, that is: smuggling in contraband and counterfeit cigarettes, trafficking in contraband cigarettes, trafficking in counterfeit cigarettes, mail fraud and wire fraud:

| Count | Date | Defendant | Amount of monetary instrument and funds |
|-------|------|-----------|------------------------------------------|
| 91 | April 4, 2002 | | |
| 92 | April 5, 2002 | | |

in violation of Title18, United States Code, Section 1956 (a)(2)(A).

## NOTICE OF GOVERNMENT'S DEMAND FOR FORFEITURE
### 18 U. S. C. §§ 2, 371, 545, 981, 1341, 1343, 1349 and 2342(a), 2320(a), and
### 28 U.S.C. § 2461, and 18 U.S.C. §§ 982, 1956 and 1956(h)

1. As a result of the foregoing criminal violations as set forth in COUNTS ONE through SIXTEEN, COUNTS FIFTY-ONE through SIXTY-ONE and SIXTY-THREE through NINETY-TWO, the Defendant,                    , shall forfeit to the United States any and all property constituting or derived from any proceeds that said Defendant obtained directly or indirectly as a

45

result of the said violations, and all property involved in the Title 18 U.S.C. § 1956 violation and all

property traceable to such property, including but not limited to the following:

    a.  Any and all right, title and interest of Defendant,             , in certain real

property described, situated, and located as follows:

> Residence located at      --                                     also known
> to be                                  with all appurtenances and improvements
> thereon, hereinafter referred to as the "Respondent Property," which is more fully
> described as follows:

    b.             in proceeds traceable to and used in the purchase of real property located at

    2.  As a result of the foregoing criminal violations as set forth in COUNTS ONE through

SIXTEEN, COUNTS FIFTY-ONE through SIXTY-ONE and SIXTY-THREE through NINETY-

TWO, the Defendants,

jointly and severally, shall forfeit to the United States any and all property constituting or derived

from any proceeds that said Defendant obtained directly or indirectly as a result of the said violations,

46

all property involved in Title 18 U.S.C. § 1956 violation and all property traceable to such property, including but not limited to the following: a $5,727,026.99 Money Judgment.

3. As a result of the foregoing criminal violations as set forth in COUNTS ONE, TWO, FOUR, TWENTY-SEVEN through TWENTY-NINE and SIXTY THREE through NINETY TWO, the Defendants,                                                                                    shall forfeit to the United States any contraband cigarettes and any and all property constituting or derived from any proceeds that said Defendants obtained directly or indirectly as a result of the following violations: Conspiracy to: Smuggle Cigarettes into U.S., Traffic in Contraband Cigarettes and Traffic in Counterfeit Goods, a violation of 18 §§ 371, 545, 2342(a) & 2320(a); Conspiracy to: Commit Wire Fraud and Commit Mail Fraud, a violation of 18 §§ 1349, 1343 & 1341; Aiding and Abetting, and Smuggling Contraband and Counterfeit Cigarettes, a violation of 18 §§ 2 & 545; and Aiding and Abetting, and Trafficking in Contraband Cigarettes, a violation of 18 U.S.C. §§ 2 & 2342(a); **and** any and all property involved in and all property traceable to such property of the following violations: Conspiracy to Launder Monetary Instruments, a violation of 18 U.S.C. § 1956(h); Aiding and Abetting, and Laundering Monetary Instruments, a violation of 18 U.S.C. §§ 2 & 1956 (a)(1)(A)(i); and Laundering Monetary Instruments, a violation of 18 U.S.C. §1956 (a)(2)(A), including but not limited to the following: 959 cases of cigarettes.

4. As a result of the foregoing criminal violations as set forth in COUNTS ONE, TWO, SIXTEEN, FORTY-FIVE, FIFTY-THREE, FIFTY-SEVEN and SIXTY THREE through NINETY TWO,   the Defendants,

shall forfeit to the United States any contraband cigarettes and any and all property constituting or derived from any proceeds that said Defendants obtained directly or indirectly as a

47

result of the following violations: Conspiracy to: Smuggle Cigarettes into U.S., Traffic in Contraband Cigarettes and Traffic in Counterfeit Goods, a violation of 18 §§ 371, 545, 2342(a) & 2320(a); Conspiracy to: Commit Wire Fraud and Commit Mail Fraud, a violation of 18 §§ 1349, 1343 & 1341; Aiding and Abetting, and Smuggling Contraband and Counterfeit Cigarettes, a violation of 18 §§ 2 & 545; and Aiding and Abetting, and Trafficking in Contraband Cigarettes, a violation of 18 U.S.C. §§ 2 & 2342(a); **and** any and all property involved in and all property traceable to such property of the following violations: Conspiracy to Launder Monetary Instruments, a violation of 18 U.S.C. § 1956(h); Aiding and Abetting, and Laundering Monetary Instruments, a violation of 18 U.S.C. §§ 2 & 1956 (a)(1)(A)(i); and Laundering Monetary Instruments, a violation of 18 U.S.C. § 1956 (a)(2)(A), including but not limited to the following:  751 cases of cigarettes.

## SUBSTITUTE ASSETS

5.        If any of the property described above in Paragraphs 1. and 2. of the Notice of Government's Demand for Forfeiture, as being subject to forfeiture pursuant to 18 U.S.C. §§ 2, 371, 545, 981, 1341, 1343, 1349 and 2342(a), 2320(a), and 28 U.S.C. § 2461, and 18 U.S.C. §§ 982, 1956 and 1956(h) as a result of any act or omission of Defendants,

a.        cannot be located upon the exercise of due diligence;
b.        has been transferred or sold to, or deposited with, a third person;

c.    has been placed beyond the jurisdiction of the court;

d.    has been substantially diminished in value; or

e.    has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States of America, pursuant to 18 U. S. C. §§ 2, 371, 545, 981, 1341,

1343, 1349 and 2342(a), 2320(a), and 28 U.S.C. § 2461, and 18 U.S.C. §§ 982, 1956 and 1956(h),

to seek forfeiture of any other property of said Defendants,

up to the value of said property listed in Paragraphs 1. and 2. above as being subject to forfeiture.

A TRUE BILL.

_____

FOREPERSON OF THE GRAND JURY

JOHNNY SUTTON
UNITED STATES ATTORNEY

By: _____
Assistant United States Attorney

49

# U.S. District Court [LIVE]
## Western District of Texas (El Paso)
### CRIMINAL DOCKET FOR CASE #: 3:03-cr-02294-PRM-10
#### Internal Use Only

Case title: USA v. Abraham, et al          Date Filed: 12/13/2003

Assigned to: Judge Philip R. Martinez

**Defendant (10)**

**Dean Miller**
*TERMINATED: 02/17/2005*

represented by **Daniel Salvador Gonzalez**
1216 Montana Ave.
El Paso, TX 79902
(915) 533-6393
Fax: 915/533-4188
Email: daniel@dgonzalezlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Michael Pancer**
105 West "F" St., 4th fl.
San Diego, CA 92101
(619) 239-1826
Fax: 619/233-3221
*TERMINATED: 11/02/2004*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Pending Counts**

18:371.F CONSPIRACY TO
DEFRAUD THE UNITED STATES
(1)

**Disposition**

Deft. sentenced to 48 months
imprisonment with credit for time
served while in custody for his federal
offense followed by 3 years supervised
release and $10,000.00 fine and $10.00
SA

**Highest Offense Level (Opening)**

Felony

**Terminated Counts**

18:1343.F FRAUD BY WIRE, RADIO,
OR TELEVISION

A true copy of the original, I certify.
Clerk, U. S. District Court

By _____
**Disposition**                    Deputy

Remaining counts dismissed

(2)

18:545.F SMUGGLING GOODS INTO
THE U.S. (EXCEPT NARCOTICS
AND LIQUOR)                                     Remaining counts dismissed
(10-11)

18:2342.F TRAFFICKING IN
CONTRABAND CIGARETTES                           Remaining counts dismissed
(48)

18:2320.F TRAFFICKING IN
COUNTERFEIT GOODS/SERVICES
(SUB OFFENSE)                                   Remaining counts dismissed
(50)

**Highest Offense Level (Terminated)**

Felony

**Complaints**                                  **Disposition**

None

---

**Plaintiff**

USA                                represented by    **Jose Luis Gonzalez**
                                                    Assistant United States Attorney
                                                    700 E. San Antonio Street
                                                    Suite 200
                                                    El Paso, TX 79901
                                                    (915) 534-6884
                                                    Fax: 915/534-3418
                                                    Email: jose.gonzalez3@usdoj.gov
                                                    *LEAD ATTORNEY*
                                                    *ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|------------|---|-------------|
| 12/11/2003 |   | Case assigned to Judge Philip R. Martinez (mt) (Entered: 02/01/2004) |
| 12/11/2003 | 3 | Sealed Indictment filed against Jorge Abraham Jorge Abraham (1) count(s) 1, 2, 3-4, 7, 10-13, 16, 17-31, 34, 37-38, 41-42, 45-47, 48-50, 51-61, 63, 64-70, 72-73, 75, 77-90, 91-92; Felipe Castaneda (2) Counts 1, 2, 3, 4, 7, 12-13, 16, 24, 26-31, 34, 41-42, 45-47, 49; Ignacio Abraham (3) Counts 1, 2, 7, 13, 16, 17, 19, 31, 34, 42, 45-47, 49, 59, 63, 71, 74, 86; Omar Jaramillo (8) Counts 1, 2, 7, 13, 31, 34, 42, 49; Lorenzo Enrique-Campos (9) Counts 1, 2, 11-12, 16, 41, 45, 50, 61; Dean Miller (10) Counts 1, 2, 10-11, 48, 50; Robert Tarantino (11) Counts 1, 2, 10-11, 48, 50, 54, 60-61, 63; Scott Snyder (12) Counts 1, 2, 6, 15, 36, 40, 44, 49; Timothy J. Farnham (13) Counts 1, 2, 6, 9, 15, 27, 33, 36, 40, 44, 46, 49; Donald Deland (14) Counts |

| | | |
|---|---|---|
| | | 1, 2, 15, 40, 44, 46, 49, 63, 69, 88; Peter L. Pembleton (15) Counts 1, 2, 3, 5, 8, 14, 24, 28, 32, 35, 39, 43, 63, 71-72, 76-77, 81-82, 84; Anthony Leone (16) Counts 1, 2, 3, 5, 8, 14, 24, 28, 32, 35, 39, 43, 63, 77, 81, 84; Fernando Ortiz (17)) Counts 1, 2, 3-4, 12-13, 16, 21-29, 34, 37-38, 41-42, 45-46, 54; Antonio Aranda (18) Counts 1, 2, 12, 16, 41, 45; Saul Iglesias (19) Counts 1, 2, 16, 45 (mt) Modified on 03/12/2004 (Entered: 02/01/2004) |
| 12/11/2003 | | (Court only) Added for USA attorney Jose Luis Gonzalez (mt) (Entered: 02/01/2004) |
| 12/11/2003 | | (Court only) Sealed Indictment - Adding unsealed defendant Dean Miller (10) count(s) 1, 2, 10-11, 48, 50 ) (mt) (Entered: 02/10/2004) |
| 12/11/2003 | 32 | Motion by USA as to Dean Miller to seal Indictment (mt) (Entered: 02/10/2004) |
| 12/11/2003 | 33 | Order as to Dean Miller granting motion to seal Indictment [32-1] as to Dean Miller (10) signed by Judge Norbert J. Garney (mt) (Entered: 02/10/2004) |
| 12/11/2003 | 34 | Order Bench warrant issued for Dean Miller signed by Judge Norbert J. Garney (mt) (Entered: 02/10/2004) |
| 12/11/2003 | | Bench warrant issued for Dean Miller (mt) (Entered: 02/10/2004) |
| 12/31/2003 | 79 | Amended Motion by USA as to Dean Miller : amending motion to seal Indictment [32-1] (mt) (Entered: 02/10/2004) |
| 12/31/2003 | 80 | Order as to Dean Miller granting amended motion amending motion to seal Indictment [79-1] as to Dean Miller (10) signed by Judge Philip R. Martinez (mt) (Entered: 02/10/2004) |
| 01/28/2004 | | Defendant(s) Dean Miller arrested in other district: San Diego, California (mt) (Entered: 02/10/2004) |
| 01/29/2004 | 111 | Notice of filing return of Lis Pendens as to County Clerk of Deed Records on 1/28/04 by USA (mt) (Entered: 02/01/2004) |
| 01/29/2004 | 112 | Notice of filing return of Lis Pendens on 1/28/04 by USA (mt) (Entered: 02/01/2004) |
| 01/29/2004 | 113 | Notice of filing return of Service as to Lis Pendens on 1/28/04 by USA (mt) (Entered: 02/01/2004) |
| 01/29/2004 | 114 | Notice of filing return of service as to Lis Pendens on 1/28/04 by USA (mt) (Entered: 02/01/2004) |
| 01/29/2004 | | Indictment unsealed as to Dean Miller, Robert Tarantino, Peter L. Pembleton, Anthony Leone (mt) (Entered: 02/10/2004) |
| 02/06/2004 | 152 | Notice of filing notice of Lis Pendens as the Central Appraisal District, by USA (mt) (Entered: 02/07/2004) |
| 02/09/2004 | 158 | Bench warrant returned executed for Dean Miller on 1/28/04 (mt) (Entered: 02/10/2004) |
| | | |

| 02/10/2004 | 165 | Bond filed: $40,000.00 Unsecured for Dean Miller (mt) (Entered: 02/10/2004) |
|---|---|---|
| 02/13/2004 | 205 | Notice as to Dean Miller arraignment 10:30 2/20/04 for Dean Miller , docket call 8:00 2/27/04 for Dean Miller (mt) (Entered: 02/15/2004) |
| 02/13/2004 | 206 | Motion by USA as to Jorge Abraham, Felipe Castaneda, Ignacio Abraham, Omar Jaramillo, Lorenzo Enrique-Campos, Dean Miller, Robert Tarantino, Scott Snyder, Timothy J. Farnham, Donald Deland, Peter L. Pembleton, Anthony Leone, Fernando Ortiz, Antonio Aranda, Saul Iglesias to clarify the Court's standing order and to extend time under the Court's standing discovery order (mt) (Entered: 02/15/2004) |
| 02/18/2004 | 212 | Motion by Dean Miller for (Michael Pancer) to appear pro hac vice (mt) (Entered: 02/18/2004) |
| 02/18/2004 | | Arraignment as to Dean Miller resetting to 10:30 2/27/04 for Dean Miller (mt) (Entered: 02/18/2004) |
| 02/18/2004 | | Pro hac vice fee paid byMichael Pancer with as to Dean Miller Amount: $ 25.00 Receipt # 347338 (mt) (Entered: 07/07/2004) |
| 02/19/2004 | 218 | Order as to Dean Miller docket call 8:00 3/26/04 for Dean Miller signed by Judge Philip R. Martinez (mt) (Entered: 02/19/2004) |
| 02/23/2004 | | (Court only) Added for Dean Miller attorney Michael Pancer (mt) (Entered: 02/23/2004) |
| 02/23/2004 | 223 | Order as to Dean Miller granting motion for (Michael Pancer) to appear pro hac vice [212-1] as to Dean Miller (10) signed by Judge Philip R. Martinez (mt) (Entered: 02/23/2004) |
| 02/23/2004 | 224 | Notice of attorney appearance for Dean Miller by Michael Pancer (mt) (Entered: 02/23/2004) |
| 02/23/2004 | | Received documents as to Dean Miller transferred pursuant to Rule 40 from San Diego, CA (mt) (Entered: 02/23/2004) |
| 02/23/2004 | 228 | Waiver of personal appearance at arraignment and entry of plea not guilty by Dean Miller (10) count(s) 1, 2, 10-11, 48, 50 signed by Judge Norbert J. Garney (mt) (Entered: 02/24/2004) |
| 02/23/2004 | 229 | General Order of Discovery as to Dean Miller signed by Judge Philip R. Martinez (mt) (Entered: 02/24/2004) |
| 02/23/2004 | | Waiver of speedy trial by Dean Miller (mt) (Entered: 02/24/2004) |
| 02/23/2004 | | Defendant(s) Dean Miller first appearance held ; ; Defendant informed of rights. (mt) (Entered: 02/24/2004) |
| 02/24/2004 | | Bond custodian Lee Ann Samaniego added as to defendant Dean Miller (mt) (Entered: 02/24/2004) |
| 02/24/2004 | 233 | Motion by USA as to Jorge Abraham, Felipe Castaneda, Ignacio Abraham, Omar Jaramillo, Dean Miller, Robert Tarantino, Scott Snyder, Timothy J. |

| | | |
|---|---|---|
| | | Farnham, Donald Deland, Peter L. Pembleton, Anthony Leone, Fernando Ortiz, Antonio Aranda, Saul Iglesias to withdraw motion to clarify the court's standing discovery order and to extend time under the Court's standing discovery order (mt) (Entered: 02/24/2004) |
| 02/25/2004 | 234 | Order as to Jorge Abraham, Felipe Castaneda, Ignacio Abraham, Omar Jaramillo, Lorenzo Enrique-Campos, Dean Miller, Robert Tarantino, Scott Snyder, Timothy J. Farnham, Donald Deland, Peter L. Pembleton, Anthony Leone, Fernando Ortiz, Antonio Aranda, Saul Iglesias denying motion to clarify the Court's standing order and to extend time under the Court's standing discovery order [206-1] as to Jorge Abraham (1), Felipe Castaneda (2), Ignacio Abraham (3), Omar Jaramillo (8), Lorenzo Enrique-Campos (9), Dean Miller (10), Robert Tarantino (11), Scott Snyder (12), Timothy J. Farnham (13), Donald Deland (14), Peter L. Pembleton (15), Anthony Leone (16), Fernando Ortiz (17), Antonio Aranda (18), Saul Iglesias (19) signed by Judge Philip R. Martinez (mt) (Entered: 02/25/2004) |
| 02/25/2004 | 235 | Order as to Jorge Abraham, Felipe Castaneda, Ignacio Abraham, Omar Jaramillo, Dean Miller, Robert Tarantino, Scott Snyder, Timothy J. Farnham, Donald Deland, Peter L. Pembleton, Anthony Leone, Fernando Ortiz, Antonio Aranda, Saul Iglesias granting motion to withdraw motion to clarify the court's standing discovery order and to extend time under the Court's standing discovery order [233-1] as to Jorge Abraham (1), Felipe Castaneda (2), Ignacio Abraham (3), Omar Jaramillo (8), Dean Miller (10), Robert Tarantino (11), Scott Snyder (12), Timothy J. Farnham (13), Donald Deland (14), Peter L. Pembleton (15), Anthony Leone (16), Fernando Ortiz (17), Antonio Aranda (18), Saul Iglesias (19) signed by Judge Philip R. Martinez (mt) (Entered: 02/25/2004) |
| 02/27/2004 | 242 | Motion by Dean Miller to enlarge conditions of release fo deft. to travel to Florida and New York for business (mt) (Entered: 02/27/2004) |
| 03/02/2004 | 248 | Order referring motion as to Dean Miller : referred motion to enlarge conditions of release fo deft. to travel to Florida and New York for business [242-1] to Honorable Norbert Garney signed by Judge Philip R. Martinez (mt) Modified on 03/03/2004 (Entered: 03/02/2004) |
| 03/03/2004 | 249 | Response by USA to motion by Dean Miller : motion to enlarge conditions of release fo deft. to travel to Florida and New York for business [242-1] (mt) (Entered: 03/03/2004) |
| 03/04/2004 | 251 | Order as to Dean Miller granting motion to enlarge conditions of release for deft. to travel within the continental US, prior to travel deft. shall notify his pretrial office and obtain express written permission (to be granted at the discretion of the US Pretrial officer), and deft. to advise Pretrial officer of the destination and duration of travel and to arrange a report date immediately upon his return to San Diego,CA., [242-1] as to Dean Miller (10) signed by Judge Norbert J. Garney (mt) (Entered: 03/05/2004) |
| 03/05/2004 | | (Court only) Motion no longer referred: as to Dean Miller : motion to enlarge conditions of release fo deft. to travel to Florida and New York for business [242-1] (mt) (Entered: 03/05/2004) |
| | | |

| 03/09/2004 | 254 | Joint motion by Jorge Abraham, Ignacio Abraham, Dean Miller to extend time to file motion to suppress Title III wiretap interceptions evidence (mt) (Entered: 03/09/2004) |
| --- | --- | --- |
| 03/09/2004 | 255 | Motion by Jorge Abraham, Dean Miller that all Title 3 applications, affidavits, orders, sealing order requests, and sealing orders are to be placed a the copy depository within 7 days. (mt) (Entered: 03/09/2004) |
| 03/24/2004 | 265 | Order denying as moot request to place documents in the copy depository as to Jorge Abraham, Dean Miller signed by Judge Philip R. Martinez (mm1) (Entered: 03/24/2004) |
| 03/24/2004 | 266 | Order as to Jorge Abraham, Dean Miller order indicates failure to continue would make continuation of further proceedings impossible or result in a miscarriage of justice , setting docket call for 8:00 4/30/04 for Jorge Abraham, for Dean Miller signed by Judge Philip R. Martinez (mm1) (Entered: 03/24/2004) |
| 03/24/2004 | 268 | Notice of attorney appearance for Dean Miller by Daniel Salvador Gonzalez (mm1) (Entered: 03/25/2004) |
| 03/26/2004 | 279 | Order as to Jorge Abraham, Dean Miller order indicates failure to continue would make continuation of further proceedings impossible or result in a miscarriage of justice , resetting docket call for 8:00 5/10/04 for Jorge Abraham, for Dean Miller signed by Judge Philip R. Martinez (mm1) (Entered: 03/29/2004) |
| 04/02/2004 | 287 | Notice of filing by Dean Miller by attorney Michael Pancer that deft. Dean Miller's local counsel will be Daniel Gonzales. (mt) (Entered: 04/02/2004) |
| 04/05/2004 | 289 | Motion by Jorge Abraham, Dean Miller for order directing the goVts. to give notice its intention to use evidence , for notice by by the Govt. of intention to rely upon other crimes evidence , to disclose identity and wherabouts of confidential informants and for pretrial access , for attorney voir dire and to reserve further motions (mt) (Entered: 04/05/2004) |
| 04/05/2004 | 290 | Memorandum by Jorge Abraham, Dean Miller in support of motion for order directing the goVts. to give notice its intention to use evidence [289-1], motion for notice by by the Govt. of intention to rely upon other crimes evidence [289-2], motion to disclose identity and wherabouts of confidential informants and for pretrial access [289-3], motion for attorney voir dire and to reserve further motions [289-4] (mt) (Entered: 04/05/2004) |
| 04/05/2004 | 291 | Motion by Jorge Abraham, Dean Miller for disclosure of proffer information (mt) (Entered: 04/05/2004) |
| 04/05/2004 | 292 | Memorandum by Jorge Abraham, Dean Miller in support of motion for disclosure of proffer information [291-1] (mt) (Entered: 04/05/2004) |
| 04/05/2004 | 298 | Motion by Dean Miller to sever (mt) (Entered: 04/06/2004) |
| 04/05/2004 | 299 | Memorandum by Dean Miller in support of motion to sever [298-1] (mt) (Entered: 04/06/2004) |
|  |  |  |

| 04/13/2004 | 309 | Response by USA to motion by Jorge Abraham, Dean Miller : motion for disclosure of proffer information [291-1] (mt) (Entered: 04/13/2004) |
|---|---|---|
| 04/13/2004 | 310 | Response by USA to motion by Jorge Abraham, Dean Miller : motion for disclosure of proffer information [291-1], motion for order directing the goVts. to give notice its intention to use evidence [289-1], motion for notice by by the Govt. of intention to rely upon other crimes evidence [289-2], motion to disclose identity and wherabouts of confidential informants and for pretrial access [289-3], motion for attorney voir dire and to reserve further motions [289-4] (mt) (Entered: 04/13/2004) |
| 04/16/2004 | 312 | Response by USA in opposition to motion by Dean Miller : motion to sever [298-1] (mt) (Entered: 04/16/2004) |
| 04/16/2004 | 321 | Amended motion by Jorge Abraham, Ignacio Abraham, Dean Miller : amending motion to suppress wiretap-related evidence [261-1] (mt) (Entered: 04/19/2004) |
| 04/16/2004 | 322 | Memorandum by Jorge Abraham, Ignacio Abraham, Dean Miller in support of amended motion amending motion to suppress wiretap-related evidence [321-1] (mt) (Entered: 04/19/2004) |
| 04/21/2004 | 323 | Motion by Jorge Abraham, Ignacio Abraham, Dean Miller to extend time for the govt. to respond to defts. joint amended motion to suppress wiretap-related evidence (mt) (Entered: 04/22/2004) |
| 04/23/2004 | 325 | Order as to Jorge Abraham, Ignacio Abraham, Dean Miller granting motion to extend time for the govt. to respond to defts. joint amended motion to suppress wiretap-related evidence on or before 5/21/04, [323-1] as to Jorge Abraham (1), Ignacio Abraham (3), Dean Miller (10) signed by Judge Philip R. Martinez (mt) (Entered: 04/26/2004) |
| 04/27/2004 | 328 | Order as to Jorge Abraham, Dean Miller docket call 4:00 5/10/04 for Jorge Abraham, for Dean Miller signed by Judge Philip R. Martinez (mt) (Entered: 04/27/2004) |
| 05/10/2004 | | Docket call for Jorge Abraham, Felipe Castaneda, Ignacio Abraham, Lorenzo Enrique-Campos, Dean Miller, Robert Tarantino, Scott Snyder, Timothy J. Farnham, Donald Deland, Peter L. Pembleton, Anthony Leone, Fernando Ortiz, Antonio Aranda, Saul Iglesias held (mt) (Entered: 05/11/2004) |
| 05/10/2004 | | Motion in open court by USA as to Jorge Abraham, Ignacio Abraham, Dean Miller oral motion to extend time to file response to defts. amended motion to suppress wiretap evidence (mt) (Entered: 05/17/2004) |
| 05/11/2004 | 333 | Order as to Jorge Abraham, Felipe Castaneda, Ignacio Abraham, Dean Miller, Robert Tarantino, Scott Snyder, Timothy J. Farnham, Donald Deland, Peter L. Pembleton, Anthony Leone, Fernando Ortiz, Antonio Aranda, Saul Iglesias order indicates failure to continue would make continuation of further proceedings impossible or result in a miscarriage of justice , docket call 8:00 7/15/04 for Jorge Abraham, for Felipe Castaneda, for Ignacio Abraham, for Dean Miller, for Robert Tarantino, for Scott |

| | | |
|---|---|---|
| | | Snyder, for Timothy J. Farnham, for Donald Deland, for Peter L. Pembleton, for Anthony Leone, for Fernando Ortiz, for Antonio Aranda, for Saul Iglesias signed by Judge Philip R. Martinez (mt) (Entered: 05/11/2004) |
| 05/11/2004 | 335 | Minutes of proceedings for docket call conducted on 5/10/04 as to Dean Miller, Robert Tarantino, Scott Snyder, Timothy J. Farnham by Judge Martinez. Court Reporter: Mike Nobles (mt) (Entered: 05/11/2004) |
| 05/17/2004 | 338 | Order as to Jorge Abraham, Ignacio Abraham, Dean Miller granting oral motion to extend time to file response to defts. amended motion to suppress wiretap evidence on or before 7/1/04[0-0] as to Jorge Abraham (1), Ignacio Abraham (3), Dean Miller (10) signed by Judge Philip R. Martinez (mt) (Entered: 05/17/2004) |
| 06/14/2004 | 344 | Order as to Jorge Abraham, Felipe Castaneda, Ignacio Abraham, Dean Miller, Robert Tarantino, Scott Snyder, Timothy J. Farnham, Donald Deland, Peter L. Pembleton, Anthony Leone, Fernando Ortiz, Antonio Aranda, Saul Iglesias docket call 8:00 7/8/04 for Jorge Abraham, for Felipe Castaneda, for Ignacio Abraham, for Dean Miller, for Robert Tarantino, for Scott Snyder, for Timothy J. Farnham, for Donald Deland, for Peter L. Pembleton, for Anthony Leone, for Fernando Ortiz, for Antonio Aranda, for Saul Iglesias signed by Judge Philip R. Martinez (mt) (Entered: 06/14/2004) |
| 07/01/2004 | 346 | Response by USA to motion by Jorge Abraham, Ignacio Abraham, Dean Miller : amended motion amending motion to suppress wiretap-related evidence [321-1], motion to suppress wiretap related evidence [261-1] (mt) (Entered: 07/01/2004) |
| 07/12/2004 | 349 | Order as to Jorge Abraham, Felipe Castaneda, Ignacio Abraham, Dean Miller order indicates failure to continue would make continuation of further proceedings impossible or result in a miscarriage of justice , docket call 8:00 9/15/04 for Jorge Abraham, for Felipe Castaneda, for Ignacio Abraham, for Dean Miller signed by Judge Philip R. Martinez (mt) (Entered: 07/13/2004) |
| 07/30/2004 | 356 | Plea agreement filed as to Dean Miller (mt) (Entered: 07/30/2004) |
| 08/02/2004 | 357 | Motion by Dean Miller to withdraw all motions and joinders in motions (mt) (Entered: 08/05/2004) |
| 08/03/2004 | 362 | Order as to Dean Miller granting motion to withdraw all motions and joinders in motions [357-1] as to Dean Miller (10) signed by Judge Philip R. Martinez (mt) (Entered: 08/05/2004) |
| 09/15/2004 | 364 | Minutes of proceedings for docket call conducted on 9/15/04 as to Jorge Abraham, Felipe Castaneda, Ignacio Abraham, Dean Miller, Robert Tarantino, Scott Snyder, Timothy J. Farnham, Donald Deland, Peter L. Pembleton, Anthony Leone, Antonio Aranda, Saul Iglesias by Judge Martinez. Court Reporter: Mike Nobles (mt) (Entered: 09/15/2004) |
| 09/15/2004 | | Docket call for Jorge Abraham, Felipe Castaneda, Ignacio Abraham, Dean |

| | | |
|---|---|---|
| | | Miller, Robert Tarantino, Scott Snyder, Timothy J. Farnham, Donald Deland, Peter L. Pembleton, Anthony Leone, Antonio Aranda, Saul Iglesias held (mt) (Entered: 09/15/2004) |
| 09/15/2004 | | Docket call for Jorge Abraham, Felipe Castaneda, Ignacio Abraham, Dean Miller, Robert Tarantino, Scott Snyder, Timothy J. Farnham, Donald Deland, Peter L. Pembleton, Anthony Leone, Antonio Aranda, Saul Iglesias resetting to 8:00 11/18/04 for Jorge Abraham, for Felipe Castaneda, for Ignacio Abraham, for Dean Miller, for Robert Tarantino, for Scott Snyder, for Timothy J. Farnham, for Donald Deland, for Peter L. Pembleton, for Anthony Leone, for Antonio Aranda, for Saul Iglesias (mt) (Entered: 09/15/2004) |
| 09/15/2004 | 365 | Minutes of proceedings for docket call conducted on 9/15/04 as to Jorge Abraham, Felipe Castaneda, Ignacio Abraham, Dean Miller, Robert Tarantino, Scott Snyder, Timothy J. Farnham, Donald Deland, Peter L. Pembleton, Anthony Leone, Antonio Aranda, Saul Iglesias by Judge Martinez. Court Reporter: Mike Nobles (mt) (Entered: 09/15/2004) |
| 09/15/2004 | 366 | Minutes of proceedings for docket call conducted on 9/15/04 as to Jorge Abraham, Felipe Castaneda, Ignacio Abraham, Dean Miller, Robert Tarantino, Scott Snyder, Timothy J. Farnham, Donald Deland, Peter L. Pembleton, Anthony Leone, Antonio Aranda, Saul Iglesias by Judge Martinez. Court Reporter: Mike Nobles (mt) (Entered: 09/15/2004) |
| 09/20/2004 | 368 | Order as to Jorge Abraham, Felipe Castaneda, Ignacio Abraham, Dean Miller, Robert Tarantino, Scott Snyder, Timothy J. Farnham, Donald Deland, Antonio Aranda, Saul Iglesias order indicates failure to continue would make continuation of further proceedings impossible or result in a miscarriage of justice , docket call 8:00 11/18/04 for Jorge Abraham, for Felipe Castaneda, for Ignacio Abraham, for Dean Miller, for Robert Tarantino, for Scott Snyder, for Timothy J. Farnham, for Donald Deland, for Antonio Aranda, for Saul Iglesias signed by Judge Philip R. Martinez (mt) (Entered: 09/21/2004) |
| 10/22/2004 | 381 | Order as to Dean Miller rearraignment 9:00 11/16/04 for Dean Miller signed by Judge Michael S. McDonald (mt) (Entered: 10/25/2004) |
| 10/29/2004 | 383 | Motion by Dean Miller to substitute attorney (mt) (Entered: 10/29/2004) |
| 10/29/2004 | 385 | Order as to Dean Miller rearraignment 9:00 11/19/04 for Dean Miller signed by Judge Michael S. McDonald (mt) (Entered: 10/29/2004) |
| 11/02/2004 | 387 | Order as to Dean Miller granting motion to substitute attorney [383-1] ; terminated Michael Pancer; added Daniel Gonzalez as to Dean Miller (10) signed by Judge Philip R. Martinez (mt) (Entered: 11/03/2004) |
| 11/02/2004 | | (Court only) Attorney terminated for Dean Miller : attorney Michael Pancer for Dean Miller (mt) (Entered: 11/03/2004) |
| 11/19/2004 | 391 | Minutes of proceedings for docket call conducted on 11/18/04 as to Jorge Abraham, Felipe Castaneda, Ignacio Abraham, Dean Miller by Judge Martinez. Defts. Jorge Abraham, Felipe Castaneda, and Dean Miller move |

| | | |
|---|---|---|
| | | for rearraignment. Court Reporter: Mike Nobles (mt) Modified on 11/22/2004 (Entered: 11/22/2004) |
| 11/22/2004 | 394 | Minutes of proceedings for Felony Plea conducted on 11/19/04 as to Dean Miller by Judge McDonald. Court Reporter: ERO (mt) (Entered: 11/24/2004) |
| 11/22/2004 | | Rearraignment as to Dean Miller held (mt) (Entered: 11/24/2004) |
| 11/22/2004 | | Plea of guilty entered by Dean Miller (10) count(s) 1 (mt) (Entered: 11/24/2004) |
| 11/22/2004 | 395 | Consent to administration of guilty/nolo plea and Rule 11 Allocution by a United States Magistrate Judge as to Dean Miller (mt) (Entered: 11/24/2004) |
| 11/22/2004 | | Referred to Probation for Pre-Sentence Report as to Dean Miller (mt) (Entered: 11/24/2004) |
| 11/22/2004 | 396 | Findings of Fact and Recommendation on felony guilty/nolo plea before the United States Magistrate Judge as to Dean Miller Recommendation that the District Court accept the guilty plea. (mt) (Entered: 11/24/2004) |
| 11/24/2004 | 397 | Sealed Motion by USA as to Jorge Abraham, Felipe Castaneda, Ignacio Abraham, Omar Jaramillo, Lorenzo Enrique-Campos, Dean Miller, Robert Tarantino, Scott Snyder, Timothy J. Farnham, Donald Deland, Peter L. Pembleton, Anthony Leone, Fernando Ortiz, Antonio Aranda, Saul Iglesias SEALED (mt) (Entered: 11/26/2004) |
| 11/30/2004 | 403 | Order as to Jorge Abraham, Felipe Castaneda, Ignacio Abraham, Omar Jaramillo, Lorenzo Enrique-Campos, Dean Miller, Robert Tarantino, Scott Snyder, Timothy J. Farnham, Donald Deland, Peter L. Pembleton, Anthony Leone, Fernando Ortiz, Antonio Aranda, Saul Iglesias granting motion SEALED [397-1] as to Jorge Abraham (1), Felipe Castaneda (2), Ignacio Abraham (3), Omar Jaramillo (8), Lorenzo Enrique-Campos (9), Dean Miller (10), Robert Tarantino (11), Scott Snyder (12), Timothy J. Farnham (13), Donald Deland (14), Peter L. Pembleton (15), Anthony Leone (16), Fernando Ortiz (17), Antonio Aranda (18), Saul Iglesias (19) signed by Judge Philip R. Martinez (mt) (Entered: 12/01/2004) |
| 12/03/2004 | 421 | Order as to Dean Miller sentencing 8:00 2/17/05 for Dean Miller signed by Judge Philip R. Martinez (mt) (Entered: 12/04/2004) |
| 12/13/2004 | 439 | Order as to Dean Miller granting findings of fact plea Recommendation that the District Court accept the guilty plea. [396-1] as to Dean Miller (10) signed by Judge Philip R. Martinez (mt) (Entered: 12/14/2004) |
| 12/13/2004 | | Guilty plea accepted by the court as to Dean Miller (10) count(s) 1 ; Mooted Motions: amended motion amending motion to suppress wiretap-related evidence [321-1] as to Dean Miller (10), motion for disclosure of proffer information [291-1] as to Dean Miller (10), motion for order directing the goVts. to give notice its intention to use evidence [289-1] as to Dean Miller (10), motion for notice by by the Govt. of intention to rely upon other crimes evidence [289-2] as to Dean Miller (10), motion to |

| | | |
|---|---|---|
| | | disclose identity and wherabouts of confidential informants and for pretrial access [289-3] as to Dean Miller (10), motion for attorney voir dire and to reserve further motions [289-4] as to Dean Miller (10), motion that all Title 3 applications, affidavits, orders, sealing order requests, and sealing orders are to be placed a the copy depository within 7 days. [255-1] as to Dean Miller (10) (mt) (Entered: 12/14/2004) |
| 02/03/2005 | 480 | Notice of filing by USA of return of service on Jorge Abraham C/O Joseph Sib Abraham (mm1) (Entered: 02/03/2005) |
| 02/03/2005 | 481 | Notice of filing by USA of process receipt and return (mm1) (Entered: 02/03/2005) |
| 02/03/2005 | 482 | Notice of filing by USA of Process receipt and return (mm1) (Entered: 02/03/2005) |
| 02/03/2005 | 483 | Notice of filing by USA of Process Receipt and Return (mm1) (Entered: 02/03/2005) |
| 02/03/2005 | 484 | Notice of filing by USA of Process Receipt and Return (mm1) (Entered: 02/03/2005) |
| 02/03/2005 | 485 | Notice of filing by USA of Process Receipt and Return (mm1) (Entered: 02/03/2005) |
| 02/03/2005 | 486 | Notice of filing by USA of Process receipt and return (mm1) (Entered: 02/03/2005) |
| 02/03/2005 | 487 | Notice of filing by USA of process receipt and return (mm1) (Entered: 02/03/2005) |
| 02/03/2005 | 488 | Notice of filing by USA of process receipt and return (mm1) (Entered: 02/03/2005) |
| 02/03/2005 | 489 | Notice of filing by USA of process receipt and return (mm1) (Entered: 02/03/2005) |
| 02/03/2005 | 490 | Notice of filing by USA of process receipt and return (mm1) (Entered: 02/03/2005) |
| 02/03/2005 | 491 | Notice of filing by USA of process receipt and return (mm1) (Entered: 02/03/2005) |
| 02/03/2005 | 492 | Notice of filing by USA of process receipt and return (mm1) (Entered: 02/03/2005) |
| 02/03/2005 | 493 | Notice of filing by USA of process receipt and return (mm1) (Entered: 02/03/2005) |
| 02/16/2005 | 495 | Motion by USA as to Dean Miller for downward departure (mm1) (Entered: 02/16/2005) |
| 02/17/2005 | 496 | Minutes of proceedings for Sentencing conducted on 2/17/05 as to Dean Miller by Judge Martinez. Court Reporter: Mike Nobles (mt) (Entered: 02/18/2005) |

| 02/17/2005 | | Sentencing , Dean Miller (10) count(s) 1 held Dean Miller (10) count(s) 1. Deft. sentenced to 48 months imprisonment followed by 3 years supervised release and $10,000.00 fine and $10.00 SA ; Mooted Motions: motion for downward departure [495-1] as to Dean Miller (10) (mt) (Entered: 02/18/2005) |
|---|---|---|
| 02/17/2005 | | Dismissed count on motion by the Govrt Dean Miller (10) count(s) 2, 10-11, 48, 50 (mt) (Entered: 02/18/2005) |
| 02/24/2005 | 499 | Transcript requested by Dean Miller as to Dean Miller for dates of 2/17/05 (Proceedings Transcribed: Sentencing) (Court Reporter: Mike Nobles) (mt) (Entered: 02/25/2005) |
| 02/25/2005 | 502 | Judgment and Commitment as to Dean Miller (10) count(s) 1 ) signed by Judge Philip R. Martinez (mt) (Entered: 02/26/2005) |
| 03/07/2005 | 510 | Transcript filed as to Dean Miller for dates of 11/19/04 (Proceedings Transcribed: Plea) (Court Reporter: Swanson) (mm1) (Entered: 03/07/2005) |
| 04/27/2005 | 576 | Amended judgment as to Dean Miller (10) count(s) 1 Dean Miller (10) count(s) 1. Deft. sentenced to 48 months imprisonment with credit for time served while in custody for his federal offense followed by 3 years supervised release and $10,000.00 fine and $10.00 SA ) signed by Judge Philip R. Martinez (mt) (Entered: 04/27/2005) |
| 04/27/2005 | 582 | Bench warrant returned executed for Dean Miller on 4/21/05 (mm1) (Entered: 07/14/2005) |
| 08/05/2008 | 649 | Probation/Supervised Release Jurisdiction Transferred to Southern District of California as to Dean Miller Transmitted Transfer of Jurisdiction form, with certified copies of indictment, judgment and docket sheet. (mt, ) (Entered: 08/06/2008) |